fendant of the other part, which said indenture, sealed with the seal of the said defendant, the said plaintiffs now bring here into court the date whereof is the day and year aforesaid, acknowledged himself to be indebted to the said plaintiffs, in the sum of $5000, current money, to be paid to the said plaintiffs, by him, the said defendant, on or before the 22nd day of August, in the year 1837, with legal interest thereon, until paid. Nevertheless, &c.

After *oyer* of the deed, the defendant demurred generally to the declaration, in which the plaintiffs joined.

The county court rendered judgment in favor of the plaintiff, for the debt claimed in the declaration, and the defendant appealed to this court.

The cause was submitted without argument to ARCHER, DORSEY, CHAMBERS, SPENCE and STONE, J.

By F. A. SCHLEY for the appellant, and

By ALEXANDER for the appellees, who cited *Penn & Digges, ex. of Digges vs. Carroll, et al. Mss. Decr.* 1836.

BY THE COURT.

JUDGMENT REVERSED, WITH COSTS AND
JUDGMENT FOR THE APPELLANT.

---

JOHN O. WHARTON, ABRAHAM BARNES, AND MELCHIOR B. MASON, *vs.* JOHN T. CALLAN.—*December*, 1844.

Where the defendant made his note payable to the plaintiff, who passed it away for value, and afterwards, the plaintiff paid it, he may maintain an action for money paid for the defendant, though after the note fell due, and *before* the plaintiff had paid his endorsement, the defendant was released under the act for the relief of insolvent debtors.

APPEAL from *Washington* County Court.

This was an action of *assumpsit*, brought by the appellee against the appellants, on the 16th March 1842. The plaintiff declared.

1st. On the note of the defendants, dated the 20th April 1839, payable on or before the 1st November 1839, to the plaintiff for $1000.

2nd. On an *insimul computassent*, on the 1st March 1842, and a balance due plaintiff of $1000.

3rd. For money paid, laid out and expended, &c.

The defendants pleaded in bar:

1st. *Non assumpsit.*

2nd. That as to 1st count in the declaration, the plaintiff, after the making and delivery of the note, declared on to him, endorsed and delivered it to *R. C. W.*, which said *R. C. W.*, prosecuted the said appellants to judgment upon the said note.

3rd. That on the 12th May 1840, the said *Abraham;* on the 18th August 1840, the said *Melchior;* and on the 16th March 1841, the said *John O.;* respectively became, and were petitioners for relief under the acts relating to insolvent debtors; were severally, and in due course of law, discharged from their debts, and finally released; and that the plaintiff is only entitled to a qualified judgment, to affect future acquisitions by gift, &c. This plea contained full and formal averments of the proceedings of the appellants to a final release, &c.

The plaintiff joined issue on the 1st plea, and replied to the 2nd plea of the defendants below, as follows:

The plaintiff saith, that he, &c., ought not to be barred, &c. That although true it is, that the said plaintiff did, for a valuable consideration paid to him, assign and endorse over, and deliver to the said *Richard C. Washington*, the said promissory note, mentioned and described in the *first* count of the said declaration, and the said *Richard*, as such endorser or holder of said note, did institute suit on the same, in *Washington* county court, against the said defendants, and recovered judgment against them in said court, as stated in the said plea of the said defendant, by them secondly above pleaded, yet the said plaintiff in fact saith, that the said *John O. Wharton*, to wit: (here state and finally set out the respective applications of the several defendants, for the benefit of the insolvent

law, and its supplements, and their respective discharges under the same,) and the said plaintiff says, that the said judgment, so recovered by the said *Richard*, against the said defendants, was in no way paid or satisfied by the said defendants, other than by their said respective discharges under said act of Assembly, and its several supplements; whereby, the said *Richard*, was prohibited from issuing any writ of execution, or other process on said judgment, whereby he could affect either the persons or property of said defendants, or either of them; except such property of said defendants as was not included in their schedules, returned in their said applications, of which the said plaintiff says there was none. And the said plaintiff, in fact, further saith, that because of the said insolvency of the said defendants, and their failure to pay, or in any manner satisfy said judgment, the said *Richard*, as holder and endorser of said note, in the first count of said declaration mentioned, afterwards, and after the said defendants were discharged as aforesaid, to wit: on the first day of February 1842, at the county aforesaid, demanded and received from him, the said plaintiff, as endorser on said note as aforesaid, the full amount of said note then due, and he, the said plaintiff, as such endorser, then and there paid to the said *Richard C. Washington*, a large sum of money, to wit: the sum of $1200, current money, in full, for the said claim of said *Richard*, on him, the said plaintiff, on said promissory note, on which said judgment was rendered; by virtue of which said payment by him, the said plaintiff, to the said *Richard*, a right of action to recover the same from the said defendants, hath accrued to him, the said plaintiff; and this he, the said plaintiff, is ready to verify; wherefore he prays judgment on the 1st count; and his damages by him sustained, on occasion of the non-performance of the said promise and undertaking of the said defendants, in the said first count, in the said declaration mentioned; to be adjudged to him, &c.

Replication to 3rd plea.

The said plaintiff saith, that the said defendants, heretofore, to wit, on the 20th day of April 1839, at, &c., made their cer-

tain promissory note in writing, bearing date the day and year aforesaid, and thereby, then and there, on or before the first day of November 1839, they, or either of them, promised to pay to the said *John F. Callan*, or order, for value received, $1000; and then and there, delivered the said note to the said *John F. Callan;* and the said plaintiff, to whom, or to whose order, the payment of the said sum of money, in the said promissory note specified, was to be made, after the making of the said promissory note, and before the payment of the said sum of money therein specified, to wit: on the first day of November, in the year 1839, at the county afore-said, endorsed the said promissory note, by which said en-dorsement, he, the said plaintiff, then and there, ordered and appointed the said sum of money, in the said promissory note specified, to be paid to one *R. C. W.;* and then and there, by said endorsement and assignment, bound himself to be respon-sible for the payment of the same, without the form of a pro-test of said note; by means whereof, and by force of the sta-tute, in such case made and provided, the said defendants then and there, became liable to pay to the said *Richard*, the said sum of money in the said note specified, according to the tenor and effect of the said promissory note; and being so liable, they, the said defendants, in consideration thereof, afterwards, to wit: on the fourth day of November 1839, at the county aforesaid, undertook, and then and there, faithfully promised the said *Richard*, to pay him the said sum of money, in the said promissory note specified, according to the tenor and effect thereof, yet the said defendants wholly failed to pay to the said *Richard*, the said sum of money, in the said promissory note specified; and thereupon, the said *Richard*, afterwards, to wit: at the March term, in the year 1840, in *Washington* county court, at the county aforesaid, impleaded the said defendants, in a certain plea of trespass on the case on promises, to the damage of the said *Richard*, in the sum of $2000, for the not performing the said promise, to pay said promissory note; and such proceedings were, thereupon, had in the said court; that afterwards, to wit, on the 23rd day of March 1841,

the said *Richard*, by the consideration and judgment of the said court, recovered in said plea against the said defendants $2000, for his damages which he had sustained, as well by reason of the not performing the said promise and undertaking, to pay said promissory note, as for his costs and charges by him about his suit in that behalf expended, whereof the said defendants were convict, as by the record and proceedings thereof, still remaining in this court, will more fully and at large appear; and the said plaintiff further says, that the said defendants never paid, or in any manner satisfied the said judgments; but obtained a release, from the same, by their respective applications for the benefit of the said act of Assembly, and its several supplements; and their several discharges under the same, at the several times and in the manner stated and set forth in their said third plea; whereby, and because of said discharges of said defendants, without having in any manner paid or satisfied the said promissory note, or said judgment for the recovery of the same, the said *Richard*, afterwards, and after the said discharges of said defendants, to wit, on the first day of February, in the year 1842, as endorsee and holder of said promissory note, demand of him, the said *John F. Callan*, as endorser on said note, and as security to him for the payment of the same by the said defendants, the said sum of money specified in said promissory note, and all interest due on the same; and which said sum of money, the said *John F. Callan* was bound in law to pay; and the said plaintiff further, in fact saith, that he did afterwards, and after the said discharges of said defendants, under said act of Assembly, and its several supplements, to wit, on the first day of February 1842, at the county aforesaid, pay to the said *Richard*, as holder and endorser of said promissory note, and in satisfaction of the same, the sum of $1200, current money; and which said sum of money the said plaintiff saith, was so much money laid out, expended, and paid by him, the said plaintiff, at the special instance and request, and to and for the use and behoof of them, the said defendants, since their said respective discharges; whereby, notwithstanding said discharges, action hath

23    v.2

accrued to him, the said plaintiff, to demand and recover from them, the said defendants, the said sum of current money, so paid for them as aforesaid ; and this, he, the said plaintiff, is ready to verify; wherefore he prays judgment, and his damages by him sustained, on occasion of the non-performance of the said several promises and undertakings, in the said declaration mentioned, to be adjudged to him, &c.

The defendants demurred generally to the replication to the *third* plea, in which the plaintiffs joined. The county court rendered judgment on the demurrer for the plaintiffs, and damages were assessed by consent. The defendants prosecuted the appeal.

The cause was argued before ARCHER, DORSEY, CHAMBERS, SPENCE, STONE and SEMMES, J.

MASON, for the appellants, maintained, as this was not the case of a security suing his principal, upon the ground of payment made, after the principal had been released by operation of law, the action could not be maintained. And he cited, 3 *D. & E.* 341, 98, 599. 3 *Wilson*, 346.

The appellee was a *bona fide* creditor of the appellant, by reason of the note, and as the note could have been proved by him, as a debt against the insolvent's estate, there was no liability over. 4 *D. & E.* 825.

At this point of the argument, R. JOHNSON, also for the the appellants, enquired, if the court would hear an argument in opposition to their judgment, in the appeal of *Harris vs. Oliver, E. S. Mss.* In that case, the note was made for the accommodation of the endorser, who, after his release as an insolvent debtor, was offered as a witness for the maker of the note ; and it was held, as the witness would be liable over to the defendant, who offered him, upon his paying the note, he was incompetent to testify.

The court, upon consultation at the bar, said the principle of that decision would not be disturbed.

F. A. SCHLEY for the appellee.

This case is not distinguishable in principle, from *Harris vs. Oliver.* The endorser, here, has no right of action, until he has paid the note. Until then, he has no debt to prove.

*Callan* would not be permitted to question the appellant's right to a release, until he had paid.

The rules applicable to bills of exchange, are only applicable to notes after endorsement. *Byles on Bills,* 17 *Law. Lib. Smith's Mer. Law.* 163, 164. *Chitty on Bills,* 553. 2 *Burr.* 676. *Burr.* 1224. 1 *G. & J.* 175.

Notes after endorsement, take the character of inland bills. The rules, as to bills creating rights and duties, show that endorsers are mere sureties, entitled to such rights, and will be protected accordingly. *Chitty,* 266. An endorsement is an indemnity, provided due notice is given of failure to pay by the maker. *Callan* is in law, as the drawer of a bill, and hence, a security for the acceptor. *Chitty on B.* 333, *note l,* states the order of liability, as to the several parties to the instrument. 3 *Boss & Puller,* 366. 4 *Bing.* 720. 16 *Law. Lib.* 136, 137, 138. 3 *Kent Com.* 86.

Nothing will discharge the acceptor, but payment and release, or what is equivalent to a release. A discharge under insolvent law, is neither 4 *Bing.* 717. 15 *E. Com. Law, R.* 126.

*Callan* had no control over the bill at the time of insolvency. He had parted with it. The endorser's rights arise on payment of the note. 1 *Lord Ray.* 742. 3 *H. & J.* 132, 133.

By payment by the endorser, after his payment a new contract is created. 17 *Law. Lib.* 161.

Before this he had no right of action. Then can the prior release affect him? Can it operate on a contract not then in existence? The insolvent law only affects the debts due at the period of arrest. Yet it is no satisfaction. The debt still remains. 4 *D. & E.* 447.

Then a surity who pays the debt, is not precluded by the prior insolvency of his principle: any other construction would be unjust.

REVERDY JOHNSON in reply.

The thing to be accomplished by the act of 1805, ch. 110, sect. 5 and 13, was the emancipation of the debtor from all his then engagements, from the incumbrance of his debts. All his property was to be surrendered up; nothing was to be kept for contingencies. All property, real, personal, and mixed, was to be conveyed. The 5th section discharges the debtor from all debts due, owing or contracted; all his covenants, all his promises, all discharged; every form of agreement, deed, or contract, is discharged. The petitioners under the act of 1805, (which afterwards was made the basis of our general system,) were merchants; all indebted on negotiable paper. The legislature designed to apply the act to negotiable paper, for all the petitioners were then so indebted. The endorser, here, is a creditor, by force of the original contract; and by that alone. The act was to release a petitioner, but no other person. It contemplated, that other persons might be liable, but it was *the debt* with reference to the *original debtor*, the legislature struck·at. The 13th sect. gives relief as to subsequent arrests, upon antecedent contracts; and a party can only apply once in two years. The case cited from 4 *D. & E.* 447, has no application here. It relates to a release under the *Lord's* act, which has no resemblance to our law. A release there, is a statutable payment of the particular debt, for which the party was executed. 2 *Sell. Prac.* 346

Hence, there must be a remedy, still, in favor of the creditor, who had not charged the debtor in execution. 3 *Wilson* 262. 1 *Term Rep.* 598, 346, are cases, in which there was no obligation on the part of the debtor, to pay at all; no consideration; no right of action; 3 *H. & J.* 125. Failure of consideration, unless in cases of *mala in se vel prohibita*, can only be taken advantage of by immediate parties to the contract. As to *third* persons, the question is not open. Where a holder of a note has given value, it is immaterial whether the instrument was, originally, an accommodation to another or not. This is all that 3 *H. & J.* 125, decides. The case before us is altogether different from

that. The appellants were bound to pay *Callan*. On failure to pay, they were fixed as to him. *Callan* was fixed, as to *Washington;* who might have had two judgments, yet but one satisfaction. How then did *Callan* stand to the makers after judgment? He might pay, demand an assignment of *Washington's* judgment against the appellants, and have it entered for his use. Then *Callan* was bound to pay. Yet it is argued, if he refused and postpones payment, he may recover. But if he does his duty and pays promptly, he cannot. This cannot be: he is then a creditor, and bound by the act of insolvency, where legal and equitable creditors may all come in.

By the Court—

JUDGMENT AFFIRMED.

---

WILLIAM M. BEALL AND THERESA McELFRESH, ADM'R. OF JOHN H. McELFRESH, *vs.* GEORGE SCHLEY, DAVID BARR AND CHRISTINA BARR.—*December*, 1844.

M, by his last will, devised to one of his three sisters, certain real estate in fee, and constituted her his residuary legatee, and devisee; he bequeathed to her all his "money, choses in action, and all the rest, residue, and remainder of my (his) property, real, personal and mixed, (not hitherto devised or bequeathed,) of which I am now possessed, or of which I may be possessed, at the time of my death, to her, her heirs and assigns, forever." M. also devised real and personal estate, in trust, for his other two sisters. After the publication of this will, the testator purchased other real estate, and died without republishing it. HELD, that the two sisters, who took trust estates, could not also claim as heirs at law, their proportion of the after acquired estate; which, in this case passed under the residuary clause.

No person will be compelled to make an election unless the intention of the testator be sufficiently made out. There never can be a case of implied election, but upon a presumed intention of the testator.

The degree of intention necessary to raising a case of election, must plainly appear on the face of the will.

Where a testator declares in express terms his design to make T. his residuary devisee, and explicitly announces of what, by devising to her the remainder of the property of which he was *then* possessed, or of which he might be possessed, *at the time of his death;* this is evidence of his intention to devise all the estate of which he might die possessed; and upon the equitable principles of election, is a devise to that extent.