(Decided June 20th, 1862.)

---

# STATE, use of EDWARD BUCKEY, *vs.* HENRY CULLER.

A demurrer to a replication, brings before the court the sufficiency of the plea, the effect of a demurrer being, to bring before the court all the pleadings, and to mount up to the first error.

State use of Buckey *vs.* Culler.

A bond to the State in a penal sum, conditioned for the faithful performance, by a trustee, of his duties as such, executed *before* the obligor's application for the benefit of the insolvent laws, is *released by his discharge* thereunder, though the *breach* of the bond occurred *subsequently* to such discharge.

To a plea of discharge under the insolvent laws, a *replication*, stating that the defendant, when he petitioned, was not, *in fact*, insolvent, but a large *surplus* of his estate remained, which the insolvent court directed to be paid over to him, *is bad.*

In the absence of *fraud*, to impeach the judgment of an insolvent court granting a final discharge, its efficacy cannot be denied when brought collaterally in question, if the case was within the jurisdiction of such court; the jurisdiction of such courts does not depend upon the fact of the petitioner's being *actually insolvent.*

Since the Act of 1834, ch. 293, which vests the property of the insolvent, acquired by gift, devise, descent, &c., in his *trustee*, the practice of taking a *qualified* judgment, where the discharge is *pleaded*, is erroneous: such a plea is a *bar* to the action, and, if confessed, judgment must be given for the defendant.

APPEAL from the Circuit Court for Frederick County.

*Debt*, brought October 13th, 1856, by the appellant against the appellee, on a bond dated April 26th, 1847, in the penalty of $2000, conditioned for the faithful performance by George H. Buckey, of his duties as trustee, under a decree of a court of equity, in which the defendant and one Jacob M. Buckey, were co-obligors and sureties for said trustee:—Breach, that in 1855, the trustee was removed for violation of his trust, and the plaintiff appointed in his place, and it was then ascertained the trustee had $811.97, of the trust fund in his hands, which he was ordered by the equity court to pay the plaintiff, but refused and neglected so to do.

The defendant *pleaded*, that on the 12th of February 1851, he applied for the benefit of the insolvent laws, and obtained his *final discharge* thereunder, November 3rd, of the same year, and that the "promises, undertakings and *causes of action* in the declaration mentioned, were made and *accrued*, and contracted, *before*" said application. The plea avers that the defendant stated in his said petition, that he was insolvent, and

imprisoned, and under arrest for debts which he *was unable to pay;* and sets out at length full compliance with all the requirements of the insolvent laws.

The plaintiff *replied,* that on the 10th of June 1854, after the defendant's final discharge, his trustee in insolvency sold to the defendant the residue of the trust estate then unsold, for $32,000 cash, and reported to the insolvent court that a large *surplus* would remain in his hands after paying all the defendant's debts, that he had not received any part of this $32,000, from the defendant, but the defendant proposed, upon the ratification of an audit between the estate and the trustee, to furnish the trustee a sufficient sum in cash to pay all costs, commissions and expenses incurred in the the insolvent case, and all his debts filed in the case and unpaid; that thereupon the court directed an account to be so stated, and to allow the defendant any *surplus* after such payments, and on the 15th of June 1854, the auditor, in pursuance of this order, stated the account as directed, and a surplus of $12,659.22, was ascertained to be in the hands of the trustee, considering the $32,000 as paid to the trustee, and on the 14th of July of the same year, the court passed an order finally ratifying said account, and ordered the trustee to pay over to the defendant said surplus, and the trustee complied with the requirements of this order, according to the previous proposal of the defendant, by receiving from him a sufficient amount of the $32,000, to pay all costs, commissions and expenses, and the debts still due, the defendant retaining the surplus in property purchased as aforesaid, from the trustee, and never in fact paying therefor, by a payment of so much money into the trustee's hands, and then receiving it back as surplus, and proper legal conveyances have been executed by the trustee to the defendant, restoring to him all the right, title and estate of the trustee in and to such property, and the same is now held and owned by the defendant.

The defendant demurred to this replication, and the court

State use of Buckey *vs.* Culler.

(NELSON, J.) sustained the demurrer, *and gave judgment thereon for the defendant,* from which the plaintiff appealed.

The cause was argued before BOWIE, C. J., BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Jos. M. Palmer* and *Samuel Tyler,* for the appellant.

1st. A debtor's property is at common law, absolutely and unconditionally liable for his debts and contracts, and he cannot, by any act of his, extricate it from that liability. How far is this common law liability affected by the insolvent laws of this State? By secs. 2, 5 and 6, of the Act of 1805, ch. 110, all the petitioner's property must be conveyed to his trustee, for the benefit of his creditors, except "the necessary wearing apparel and bedding of himself and family," which he is allowed to retain. With this exception, all his property is subject to the common law liability for his debts. Even a claim against a foreign government for deported slaves, though not strictly a legal claim, and though falling in a long time after the discharge, is liable for the petitioner's debts. 6 *G. & J.,* 121, *Plater vs. Scott.* A statute makes no innovation on the common law, but what is expressed by the statute. 1 *Kent,* 463. *Dwarr. on Stat.,* 43.

2nd. What effect had the court's order directing the trustee to pay back the surplus into the hands of the petitioner, towards extricating it from this common law liability for his debts? This depends in some measure on sec. 12 of the Act of 1805, ch. 110, which enacts, "that the County court may, by order, limit and appoint the time for creditors to bring in and declare their claims," &c. Now this section merely prescribes a *rule of practice.* In construing a statute, we must discriminate between the *principles of law* and the *rules of practice,* of which the statute is constituted. The *principles of law,* embodied in the statute, determine the rights and obligations which the statute is designed to regulate, while the *rules of practice* merely direct the mode of carrying into effect the prin-

ciples of the statute in regard to those rights and obligations. This section does nothing more than prescribe the common rule of practice, in regard to a fund in the custody of the law, for distribution amongst creditors, and the rule is this:—a fund in a trustee's hands is always liable, except for a claim that has been filed and rejected, after it has first been suspended and further time allowed to the claimant to prove it, and he has failed to do so. *7 G. & J.*, 212, *Kent vs. O'Hara.* 4 *Md. Ch. Dec.*, 254, *Trust Co. vs. Winn & Ross.* 1 *Md. Ch. Dec.*, 271, *Dixon vs. Dixon.* If the claim has never been filed and rejected, the fund is always responsible for it while in the trustee's hands. This section, be it observed, is not intended for the benefit of the petitioner, but of the creditors as against each other, and for the protection of the trustee, so that if a creditor does not file his claim in the time prescribed, and distribution is made to those who do file their claims, and the fund is paid to them, afterwards the dilatory creditor is excluded; but the petitioner himself cannot claim the fund if the creditors do not file their claims by the prescribed time. This, too, being an *ex-parte* proceeding, knowledge of it is not presumed on the part of creditors, so far as regards the insolvent himself. *7 G. & J.*, 215. If, therefore, this fund were now in the trustee's hands, it is clear this section would not extricate it from its liability for the petitioner's debts, because they were not filed by the prescribed time. Can the court's order by virtue of *judicial authority*, as applied to this special case, have such effect? The insolvent laws being for the benefit of those *who are unable to pay their debts*, cannot contemplate a surplus, and therefore no provision is made for a surplus. If however, from any cause, a surplus, or the whole fund, should remain in the trustee's hands it is a *casus omissus*, which can never be construed to be within the statute. *Dwarr.*, 53. What then is to be done with such surplus or fund? It is a resulting trust consignable only in equity; (4 *Kent*, 306, 307;) and the insolvent court had, therefore, no jurisdiction over it, and its order controlling it is void. The surplus is in Culler's

hands, not by virtue of the court's order but by the conveyance from the trustee, and subject to all the liabilities which belonged to it in the trustee's hands.  But if this surplus is in Culler's hands by virtue of the court's order, it remains *in statu quo ante petitionem,* liable for the petitioner's debts and contracts.  Otherwise the monstrous inconsistency, injustice, and absurdity, result, of making the petitioner's future acquisitions liable for his debts, until the property owned by him at the time he petitioned is exempted.

3rd.  The bond, for the breach of which this action was instituted, is not embraced in that class of contracts or agreements from which the insolvent laws release a petitioner.  The insolvent law is confined to debtors and creditors.  Before a breach of the bond, there is nothing in the nature of a claim which entitles the obligee, or the *cestui que trust,* to a distributive share of the fund, or authorizes him to appear as a creditor, and object by allegations to the insolvent's discharge.  Neither the penalty, nor the amount of the trust fund can be claimed, and "a part of the petitioning debtor's estate be set apart and retained for the eventual satisfaction of" any possible breach of the bond.  Until, therefore, there be a breach, there is no claim; and the breach in this case occurred several years after Culler petitioned, consequently the claim is not affected by the petition.  Any other construction will make the *cestui que trust* a creditor, without any of the rights of creditors under the insolvent law.  And besides, there was no one to file the claim against the petitioner's estate.  The defaulting trustee could not file against his security.  The *cestui que trust* could not file it.  No one could file it but the substituted trustee, and he only when the amount wasted was ascertained.  If, therefore, this claim be within the insolvent law, that law makes impossible requirements, and impossibilities are never recognized as legitimate by courts.  But that the claim under this bond was not discharged under the insolvent laws, and that the plea of the discharge thereunder, was therefore bad, is settled, it is submitted, by the cases of *Wharton vs. Callan,* 2 *Gill,* 173, and *Berry vs. McLean,* 11 *Md. Rep.,* 92.

4th. But Culler was not an insolvent debtor, and therefore not entitled to the benefit of the insolvent laws. The original Act of 1805, ch. 110, was granted to persons confined in prison for debt, who represented that "they are unable wholly to pay their debts." The benefit of this law was extended by the Act of 1806, ch. 98, to any "insolvent debtor," that is, to any person who was "unable wholly to pay his debts." The Legislature would not have granted the Act to persons able to pay their debts, and did not intend the courts should extend it to such persons; the intention of the Legislature must control judicial construction. 1 *Kent,* 41, 44. *Dwarr.,* 40, 45. The petitioner must come within the class of persons intended by the Legislature—the statutory *descriptio personarum*—otherwise the court has no jurisdiction. 5 *H. & J.,* 134, *Shivers vs. Wilson.* Residence for two years in the State is required to entitle a person to the benefit of the law. Surely, then, *insolvency* is required, otherwise the incidental condition of residence is put above the principal condition of insolvency. If actual insolvency is not required, then any man may surreptitiously entitle himself to the benefit of the insolvent laws, and by his petition suspend all executions against him, and then, as in this case, plead his discharge to any subsequent suit for a breach of a contract like this, or to a suit for any debt that was not filed with the insolvent trustee. A discharge granted to a person not of the description of persons meant in the insolvent laws, when pleaded or offered in evidence in bar of a subsequent suit, as in this case, must be treated as a nullity, because the court had no jurisdiction. We admit that the judgment of a court of competent jurisdiction cannot be attacked collaterally, (3 *G. & J.,* 114, *Fridge vs. The State,*) but then it must be the judgment of a court of competent jurisdiction, in order to control the decision in a subsequent case. 2 *Burr.,* 1009, *Moses vs. Macferlan.* To determine, therefore, whether it is the judgment of a court of competent jurisdiction, the question of jurisdiction is necessarily an open one. Jurisdiction is always an open question, whether in regard to the judgment of a court of general or of particular jurisdiction, whenever the

State use of Buckey *vs.* Culler.

judgment is pleaded or offered in evidence in a subsequent suit. 10 *Coke*, 69, 76, *Case of The Marshalsea.* 1 *Pet.*, 340, *Elliott vs. Piersol.* 2 *Wilson*, 382, *Perkin vs. Proctor.* 3 *G. & J.*, 114. 5 *H. & J.*, 42, *Ins. Co. vs. M'Fadon.* Jurisdiction has respect to place, causes, and persons, and if a court has not jurisdiction of all three in a given case, its judgment is null and may be avoided by a plea. If the petitioner in a case in an insolvent court is not an insolvent debtor the court has no jurisdiction, because he is not of the class of persons over whom jurisdiction is given to that court. 10 *Coke*, 69, 76. 2 *Wilson*, 382, 386. Though the facts and the proceedings, on which the judgment pleaded or offered in evidence was rendered, be perfectly regular on their face, yet the facts stated may be disproved by evidence outside of the record, so as to show there was no jurisdiction. A discharge under the insolvent laws is not like ordinary judgments—the end of proceedings—but proceedings come after the discharge, which may show that the petitioner is not of the class of persons over whom the court has jurisdiction, and which, if the court had known, would have prevented it from granting the discharge; *a fortiori* when such a discharge is pleaded in a subsequent suit as a defence, the facts disclosed in the proceedings after the discharge may be replied, in order to show that the court had no jurisdiction, and that therefore the discharge is null and void. As it appears from the facts of this case that Culler was not an insolvent debtor, the court had no jurisdiction, and his discharge was a nullity, and therefore is not a sufficient plea in bar of this suit. The court, in cases of insolvency, is confined to insolvent persons. Though Culler stated in his application that he was insolvent, this is shown not to be the fact, but untrue; he made a fraudulent use of the insolvent laws to baffle his creditors; the jurisdiction was obtained by fraud. Not being an insolvent the court had no jurisdiction over his person. 16 *Md. Rep.*, 171, *Clark, et al., vs. Jackson, et al.* 11 *Wend.*, 647, *Denning vs. Corwin, et al.* 8 *How.*, 540 to 543, *Williamson vs. Berry.* 14 *How.*, 334, *Harris vs.*

54      v.18

*Hardeman.* If these doctrines were not law it would be impossible to keep up the boundaries between the jurisdictions of courts. In this case the court, under its authority over insolvent debtors, has taken jurisdiction of a person who is not an insolvent debtor, and then, to complete what was wrongfully begun, it has taken cognizance of a resulting trust, as has been shown.

5th. But admitting the discharge is valid, what is its effect? Its entire effect, under the Act of 1805, ch. 110, is to release the person and the property acquired by future industry. By what authority, then, is any of the property, (except the necessary wearing apparel, &c.,) owned by the petitioner at the time of his application, released from its liability for his debts and contracts? The order of the court directing the surplus to be paid back to the petitioner could not release it, for that order is utterly void. The discharge does not affect property acquired "by gift, descent, or in his own right, by bequest, devise, *or in any course of distribution.*" The surplus may well come within the description of property acquired *in any course of distribution;* these words are sufficiently comprehensive to embrace it. The replication and demurrer, raise the question: to *what judgment is the plaintiff or appellant entitled?* We say that under our *third* and *fourth* points he is entitled to an unconditional judgment. If not, that then to a judgment to affect the *surplus,* and future acquisitions, by descent, &c., for all property of an insolvent, no matter how obtained, unless by his own industry, is responsible for his debts and contracts, and the plainest justice authorises and requires a court to give such form of judgment as will make the property responsible. But, at all events, the appellant is entitled, at least, to a judgment *subject* to the discharge, and therefore, in any view of the case, the judgment in favor of the appellee must be reversed.

*H. T. Smith* and *Oliver Miller,* for the appellee.

The plea not only states a case in which the insolvent court

had jurisdiction, but fully minutely and with clearness, sets forth a compliance rigid and exact, with all the requirements of the insolvent laws, and a full and final discharge thereunder. It then avers, that "the promises, undertakings and *causes of action* in the declaration mentioned, were made and *accrued* and were contracted *before*" the application, and that since that time and since the discharge, the defendant has acquired no property by gift, descent or in his own right, by devise, bequest or in course of distribution. The replication alleges *no fraud,* does not deny any of the *allegations of the plea,* but simply asserts that after the payment of all the debts of the insolvent, a *surplus* of his assets remained, which the court directed to be paid over to the insolvent, and which, in accordance with the order of the court, was paid over to him in the mode pointed out, and the sole question is, is this replication an *answer* to the plea? The appellee insists:—

1st. That upon the presentation of a petition such as is pre-scribed by the insolvent laws, the *jurisdiction* of the insolvent court *attaches* for all the purposes contemplated by the insolvent system, and the jurisdiction having once attached, the judgment of the court granting the final discharge, is just as obligatory and conclusive as the judgment of a court of *general jurisdiction.* It cannot when coming *incidently* in question be impeached or avoided, and it so *comes incidently* in question when *pleaded,* as a defence or in bar of an action, or when offered in evidence upon issue joined on such plea. 1 *Gill,* 208, *Bowie vs. Jones.* 13 *Md. Rep.,* 240, *State vs. Reaney.*

2nd. That the *jurisdiction* of the insolvent court attaches in this case, there is, we think, no doubt, and the judgment of that case, granting the final discharge, being final and conclusive, as of a court of general jurisdiction, the next question is, what is the effect of that discharge? We insist that it is the language of the plea, and of the Act of 1805, ch. 110, sec. 5, a discharge "from all *debts,* covenants, promises and agreements, due from, or owing *or contracted by,* the applicant, *before* or at

the time of his application." From all such *debts* and *covenants*, contracts, promises and agreements, it is an absolute, final, statutory discharge. All his *debts* and *covenants*, all his promises, every form of agreement, *deed* or *contract*, is discharged. In these terms is *embraced* a *bond*, with collateral condition. It is a *debt contracted*, or a *covenant*, within the express terms of the law, and from his *obligation* thereon, he is discharged, no matter *when* the *breach*, or cause of action under it, arose. This is done, it is insisted, by the express terms of the law itself. The cases of *Wharton vs. Callan*, and *Berry vs. McLean*, are the only ones in which any exception has been allowed to the effect of a discharge, and these were cases in which a *surety* had paid debts for the insolvent principal after his discharge, and where the debts were not due before the discharge, and have no application to such a case as this, which is a *bond* under seal, by which a *debt was contracted*, and therefore, part of the judgment of discharge itself. If, therefore, the breach of this bond had not occurred until after the discharge, the bond having been executed prior thereto, the *obligation* thereon, of the appellee, was discharged.

3rd. But it is not necessary, in this case, to contend for the above proposition to the extent there stated. The record presents no such question, but, on the contrary, the plea alleges, that the *cause* of action mentioned in the declaration, *accrued* prior to the defendant's application, and this is *not traversed* or *denied* by the replication. The replication *admits* this allegation, and relies for an answer to the plea, solely upon matters which occurred in the insolvent court *subsequently* to the discharge. It is a case, then, in which the *cause of action* accrued before the application, and there can be no doubt but that the discharge operated upon it.

4th. If our first position is correct, then it would seem to follow, that any thing done in the insolvent court subsequent to the final discharge, cannot affect the rights of the appellee under that discharge. The discharge is final, whether the *result* of the application may be the payment of *one cent* in

the dollar on the insolvent's debts, or their payment in full with a *surplus*. The replication, therefore, is no answer to the plea. The assets of the insolvent when they get into the insolvent court, are *exclusively* under the control of that court, to be by it *distributed* in the mode pointed out by the insolvent laws, and its judgment making the final distribution is just as conclusive and final, as that of any other court having exclusive jurisdiction over any particular subject. 7 *Gill*, 171, *Carter vs. Dennison.* 5 *Gill*, 399, *Somerville vs. Brown.* The *jurisdiction* attaches upon the facts stated in the *application*, and does not depend upon the *result* of a *surplus*. Here the plea alleges the applicant stated in his petition, that he was *insolvent*, and was imprisoned, and under arrest for debts which he was *unable to pay.* There is no allegations in the replication that this was a fraudulent averment, or that he designed to use the insolvent laws fraudulently for the purpose of baffling his creditors. Such an averment may be perfectly true, and yet the result of the application be a *surplus*, his property may *appreciate* in value, more advantageous sales may be made than he anticipated, and in numerous contingencies a surplus may remain after payment of all debts. Does, or can this defeat or divest the jurisdiction which once properly attached, and render the discharge, and all the proceedings in the insolvent court, *null* and *void?* It is submitted not. A person becomes an insolvent debtor under the insolvent laws at the time of filing his petition, when he then acknowledges his inability to pay his debts, and applies for relief. 5 *H. & J.*, 411, *Kennedy vs. Boggs.* But it is said this *surplus* is property derived in *"a course of distribution,"* within the meaning of the insolvent laws. If so, (which we by no means admit,) it is clear that, by the Act of 1834, ch. 293, sec. 2, it passes to and vests in the trustee in insolvency, and a court of law has, therefore, no jurisdiction over it, and it cannot be affected by any judgment such a court may render.

6th. The insolvent laws, themselves, make abundant provision for notice to every creditor to bring in and declare his

claim, (Act of 1805, ch. 110, sec. 12,) and the insolvent court having exclusive jurisdiction over the subject, the appellant, if he has any remedy at all, (a question which need not be discussed here,) must seek it in that court.

Bartol, J., delivered the opinion of this court.

The judgment below in this case was rendered in favor of the defendant, upon 'his demurrer to the plaintiff's replication, and the question presented by the appeal, is the sufficiency of the replication; but before considering that question, it is necessary to pass upon the sufficiency of the plea. The effect of a demurrer being, to bring before the court all the pleadings, and to mount up to the first error, it is competent for the appellant to argue as he has done in this court, that the plea was defective and insufficient, and if sustained in that position, the judgment would be reversed, no matter how defective the replication may be.

The action is debt on a bond to the State, in the penal sum of two thousand dollars, conditioned upon the faithful performance, by George H. Buckey, (one of the obligors,) of the trust reposed in him by a decree of Baltimore county court, as a court of equity. The appellee, (defendant below,) is a co-obligor on the bond as surety for George H. Buckey.

The bond, which is the cause of action, was executed on the 26th day of April 1847. On the 12th day of February 1851, the defendant petitioned for the benefit of the insolvent laws, and was duly and finally discharged by the order of Frederick county court on the 1st Monday of November 1851. These facts are formally and sufficiently stated in the plea, and are relied on in bar of the action. The appellant insists that notwithstanding the discharge of the defendant, he remains liable on the bond, and this action can be maintained, because the breach of the condition, by George H. Buckey, alleged in the *nar.*, did not occur till the 7th day of May 1856, after the defendant's discharge.

State use of Buckey *vs.* Culler.

A majority of this court are of opinion that this objection to the plea cannot be supported.

By the 5th and 13th sections of the Act of 1805, ch. 110, the discharge of the debtor operates to release him from *"all debts, covenants, contracts, promises and agreements, due from or owing or contracted by him, before his application."* This language is broad and sweeping enough to cover the bond sued on in this case. It was a debt contracted by the defendant on the day of its date; by its very terms the obligors acknowledge themselves to be (then) held and firmly bound to the State in the sum of two thousand dollars. On that obligation the defendant was sued, and the judgment at law, if recovered, would be for that sum. It is true that under the statute of *William III.*, the defendant would be entitled to be released, on payment of such sum as the jury might assess, as damages for the breach of the condition. Still, at law, the action is debt on the bond for the sum therein named. Under the Act of 1805, the insolvent debtor is released, not merely from all debts *due and owing* at the time of this application, but from all *debts* before that time contracted. When was the debt of Henry Culler to the State contracted? It is evidenced only by the bond sued on, and was contracted when the bond was executed. The right to maintain a suit on such a bond, secured by our law to a party in interest, does not arise till the condition has been broken, but the legal debt of the obligor was contracted by the bond alone.

If this were a bond between individuals in a penal sum, conditioned for the payment of money by instalments, it could hardly be maintained, that the discharge of the obligor under the insolvent law, after the execution of the bond, and before the instalments became due, would not operate to release the insolvent from an action on the bond, although the obligee would have no right to maintain his suit before an instalment fell due.

The opinion of a majority of the court on this point is based on the construction of the Act of 1805, and its supplements,

and we have seen no authority which, in our opinion, conflicts with that construction.

The cases of *Wharton vs. Callan*, 2 *Gill*, 173, and *Berry vs. McLean*, 11 *Md. Rep.*, 92, cited by the appellant, seems to us to rest upon other and distinct grounds not applicable to this. In both those cases the decisions went upon the ground, that the debt sued for was a new cause of action not existing at the time of the insolvent's application, and the rulings of the court were in conformity with the uniform course of decisions in England, under their bankrupt law. The writer of this opinion sat in the case of *Berry vs. McLean*, and, as will appear by the opinion of our late brother Eccleston, pronounced in that case, care was taken to state that the contract there sued on was not under seal, nor did it contain any penalty, nor promise to pay any sum of money, &c. 11 *Md. Rep.*, 100. It was likened to the case of *Wharton vs. Callan*, and decided upon the same principles.

A majority of this court considering the plea in this case sufficient, we are next to examine the replication, and we are of opinion that it was bad. It states, in substance, that the defendant was not, in fact, insolvent when he petitioned, but at the sale of his land by the insolvent trustee, became the purchaser, and after the payment of the debts exhibited against him, there remained a large surplus, which went into his hands from the trustee. These facts do not in any manner impair the effect of the final discharge. In the absence of fraud to impeach the judgment of the insolvent court, (and this record presents no question of fraud or *mala fides,*) we cannot deny the efficacy of the judgment when brought collaterally in question, provided the case was within the jurisdiction of the insolvent court. And we think the appellant's counsel is in error in supposing that the jurisdiction of those courts depends upon the fact of the petitioner being actually insolvent. Nor are the rights of the parties in this action affected by the fact, that there remained in the hands of the trustee a surplus, which, under the resulting trust to the insolvent, was paid to

him. We do not deem it necessary to express any opinion as to the rights of this plaintiff to pursue that surplus in another *forum,* and by another course of proceeding. It is clear, that he cannot claim because of the existence of such surplus in the hands of the trustee, to maintain an action at law against the insolvent, on a bond executed before his application, and from which he has been discharged under the statute.

We concur with the Circuit court in its decision on the demurrer, and we are also of opinion that the judgment ought to be affirmed.

Before the Act of 1834, ch. 293, a plea of discharge under the insolvent laws, was not a complete bar to the action; for though the plea might be confessed, the plaintiff would still be entitled to a qualified judgment, subject to the effect of the discharge. This grew out of the provisions of the Act of 1805, and its supplements, which declared that certain property acquired by an insolvent after his discharge, in the manner prescribed by the Act, should still be liable, in the hands of the insolvent, to execution, to satisfy the debts of antecedent creditors. By the Act of 1834, ch. 293, such property is vested in the trustee, and not in the insolvent, and must be pursued in the insolvent court. There is no reason, therefore, why the practice which before prevailed, of taking qualified judgments, should have been continued after the Act of 1834. In our opinion, the plea in this case was a bar to the action, and the judgment below properly entered for the defendant.

*Judgment affirmed.*

(Decided June 26th, 1862.)