# BALTIMORE CITY COURT.

Filed June 22, 1907.

PRIMROSE
VS.
KENDRICKS AND ROBERTS, INC.

*B. B. Shreeves* for plaintiff.
*Charles F. Harley* for defendant.

PHELPS, J.—

It affords me great pleasure to comply with the request made by both counsel at the time the court gave its reasons for overruling the demurrer in this case on late Saturday, that the

court's opinion should be put in some more tangible form, inasmuch as it was suggested the question was one of considerable importance to a number of persons and institutions not connected with this particular case.

On June 11th, 1904, the plaintiff issued an attachment on warrant for the sum of $1,171.56 open account, against the non-resident defendant, and laid it in the hands of the Resinol Chemical Company, garnishee. On June 27th, 1904, the defendant came in, filed a bond with surety, and dissolved the attachment. The Title Guarantee and Trust Company of Scranton was the surety on the bond.

On September 13, 1905, the defendant, the Kendricks and Roberts, was declared a bankrupt in the State of Pennsylvania. In the short note case, the defendant has filed a plea of discharge in bankruptcy. The plaintiff has replied to said plea, and the defendant has demurred to the plaintiff's replication. The condition of the bond is: "That if the said Kendricks and Roberts, Incorporated, shall satisfy any judgment that shall be recovered in said case against it, then the said obligation shall be void, else to remain in full force and virtue in law."

In the argument of the demurrer to the replication to the plea of discharge in bankruptcy no stress was laid on the particular form the pleading has assumed, it being conceded that the question was one of substance and the whole learned argument for the defense was addressed to the main proposition at the bottom of that replication.

That replication is founded upon the case of Hill vs. Harding, 130 U. S. 699, in which the Supreme Court of the United States affirmed an Illinois judgment against a discharged bankrupt with a *"perpetual stay of execution";* and it is that form that this replication has borrowed and proposes to use.

Quoting from the case just referred to, "If an attachment of property in an action in a State court is dissolved by the defendant entering into a recognizance, with sureties, to pay within 90 days after final judgment against him, the amount of that judgment, and the defendant after a verdict against him, obtains his discharge in bankruptcy upon proceedings commenced more than four months after the attachment; the Bankrupt Act does not prevent the State court from rendering judgment against him on the verdict with a perpetual stay of execution, so as to leave the plaintiff at liberty to proceed against the sureties."

Further quoting from the opinion in that case: "Whether the State court is powerless to render even a formal judgment against him for the single purpose of charging the sureties, when the attachment has been dissolved and bond given, depends not upon any provision of the Bankrupt Act but upon the extent of the authority of the State court under the local law. The bond of recognizance takes the place of the attachment as a security for the debt of the attaching creditors * * * the giving of the bond or recognizance, by dissolving the attachment, increases the estate to be distributed in bankruptcy. The judgment is not against the personal property of the bankrupt, and has no other effect than to enable the plaintiff to charge the sureties, in accordance with the express terms of their contract, and with the spirit of the provision of the Bankrupt Act which declares that "no discharge shall release, discharge or affect any person liable for the same debt for or with the bankrupt, either as parties, joint contractor, indorsee, *surety* or otherwise." * * *

Quoting still further from the same decision: "If the bond was executed before the commencement of proceedings in bankruptcy, the discharge of the bankrupt protects him from liability to the obligees, so that, in an action on the bond against him and his sureties, any judgment recovered by the plaintiffs must be accompanied with a perpetual stay of execution against him, *but this discharge does not prevent* that judgment from being rendered generally against them."

The replication to the plea of discharge is founded on that case, while the demurrer is based upon the contention that there is no such practice known to the State of Maryland as the practice in Illinois.

It is objected that the practice is an absolute novelty in the State of Maryland, and not being among the established practices that warrant a special or qualified judgment in the form mentioned, viz.: a perpetual stay of execution, no court has the power to introduce such a practice. That is in brief the ground of the demurrer.

It is true, as contended by the defendant, that the decision of the Supreme Court of the United States cannot be taken any further than simply to decide that such a judgment as that rendered by the Illinois court is not in conflict with any provision of the Federal law, and raises no question of Federal jurisdiction; and that is the extent to which the court went in that case. It cannot be said that the Supreme Court of the United States has decided for all States, as a general proposition, that such a qualified judgment is a proper judgment. That is left to the local law of each State.

A very strenuous and able argument has been offered to show that it is impossible for such a qualified judgment to be entered in the State of Maryland, there being no precedent for it and no established law to that effect.

In reply to that it was argued by counsel for plaintiff that a sufficient warrant for such a qualified judgment can readily be found in the general language of Article 26, Section 14, of the Code, under the head of "Judgment": "The court shall give judgment in all actions according as the very right of the cause and matter in law shall appear to them, without regarding any matters of mere form, as sufficient matter shall appear in the proceedings upon which the court shall proceed to give judgment, and it shall appear that the action has been commenced after the cause thereof did accrue."

That is an old act passed as far back as 1763; and with respect to it we have a very interesting comment to which I called attention at the time the case was argued by a Maryland lawyer and judge, no less distinguished than Chief Justice Taney himself. The great jurist said this:

"There are many technicalities in common law proceedings which the courts ought to have reformed long ago. The power has been given them by the Legislature to give judgment according to the right of the matter, without regard to matter of form and yet they have obstinately, I must say, continued to treat as matter of substance what evidently was nothing but form, merely because it was called substance in some of the old law books." Tyler's Memoir of Taney, cited in Juridical Equity, Section 149.

It was argued on behalf of the plaintiff that the condition of this bond ought to be construed just as if this provision of the statute had been incorporated in it. In other words, the statute should be read into the bond, so that the undertaking of the surety would be that he would pay *"any judgment"* which a court would find to be "right" without respect to the particular form.

However that may be, it is at least palpably clear that the statute referred to is not to be wholly disregarded, put aside or ignored. Taken in connection with the significant commentary of the great chief justice, that statute must at least be regarded as the background of this case, pointedly indicating the direction in which the judicial mind should lean in case of doubt.

It is now to be considered where the doubt comes in, if at all.

The practice of rendering qualified judgments, so far from being a novelty in the State of Maryland, is a well established practice. It is, in fact, a very ancient practice repeatedly recognized in so old a book of forms as Harris' Entries. Qualified judgments are judgments, the execution of which is in terms limited or restrained.

The nature and extent of the limitations vary with the special exigencies of the particular case or class of cases. A few of the most familiar illustrations will now be cited:

When an administrator is sued in his official capacity, *qua* administrator, the judgment is not general or absolute, but qualified and limited so as to bind assets only, *quando acciderint*. 2 Ev. Har. 345.

In the case of judgment against the heirs-at-law, sued as such, execution is limited to the lands inherited. 2 Ev. Har., 364.

In the case of a judgment on sci. fa. against terre-tenant, execution is limited to the particular land. 2 Ev. Har., 364.

When an attachment, a valid lien under the Bankrupt Law, remains in force, not having been dissolved, a qualified judgment against the discharged bankrupt will be entered to be levied only upon the property attached.

Peck vs. Jenness, 48 U. S., 612; Dor vs. Childress, 88 U. S., 642; Hill vs. Harding, 130 U. S., 699.

And these decision of the Supreme Court of the United States in cases of bankruptcy enter into the law and practice of Maryland by virtue of the Constitution of the United States, and by virtue of the Declaration of Rights of the State of Maryland.

Under the old Maryland practice, in cases of insolvent defendants, execution was limited to after-acquired property by gift, descent, device, bequest or in course of distribution, or as more shortly expressed, a qualified judgment was entered, "subject to the legal operation of the defendant's discharge under the insolvent laws of the State of, Maryland." 2 Ev. Har., 345.

This was the uniform practice under the old insolvent system until the law was changed so as to vest such after-acquired property in the insolvent trustee, to be pursued in the insolvent court instead of in the insolvent himself. It was, thereupon, held that there was *no reason* why the practice of taking qualified judgments in such cases should have been continued after the change in the law. State, use of Buckey vs. Culler, 18 Md., 418-433; Becker vs. Whitehill, 55 Md., 572.

These cases are cited by the defendant's counsel as authority, by analogy, for the position that a qualified judgment can, under no circumstances, and for no reason, be taken against a discharged bankrupt even when the effect of an absolute judgment for the defendant would be to release the surety.

It is to be observed that in either one of these cases was there any question before the court of the liability of a surety as affected by the principal's discharge in insolvency. No such question was considered or even suggested in either of these cases. The later case of Becker vs. Whitehill, was an ordinary action of assumpsit, and in the earlier case of State, use of Buckey vs. Culler, the discharged insolvent happened to be the *surety himself.*

The true principle to be extracted from the *ratio decidendo* of these two cases, particularly the earlier and leading one, may be stated as follows:

Where *no reason* exists for a qualified judgment, such a judgment is unauthorized.

The converse of the proposition, ·if not actually implied, is plainly deducible. Where good and sufficient reason exists for a qualified judgment, such a judgment is authorized.

That is a proposition that leads directly into the heart of this case and puts it as a question of substance, and not of form, a question of right, rather than a question of tactics, whether the holding of a surety of a discharged bankrupt by rendering a judgment against the bankrupt, with perpetual stay of execution, does not harmonize and reconcile the claims of our local State jurisprudence, which requires that every person who makes a valid contract should be held up to the terms, and the claims of the Federal law which exact the discharge in bankruptcy of a person entitled to it. Such a judgment as that indicated by the Supreme Court of the United States, following the Illinois practice, has that effect. It has the effect of reconciling those two systems of jurisprudence by gratifying both.

And, therefore, I should say that it is the proper thing to do and a proper occasion for a qualified judgment to be entered.

It is perfectly easy for a discharged bankrupt to satisfy such a judgment as that if he has the means to do it. All he wants is the money or the property on which to raise the money to pay off the judgment and satisfy it. If he has not the means or the property and cannot raise the money, then the very contingency is presented as against which the surety was expected to provide, viz.: the insolvency or bankruptcy of the principal.

In the very able argument of the learned counsel for the defendant great reliance was placed upon the Massachusetts cases.

Other cases were cited, but I will only mention the Massachusetts cases, inasmuch as they were particularly relied upon as being directly in conflict with the position which has just been stated and as being in line with the decisions which require statutory intervention and require the Legislature of 'the State to pass an act authorizing the rendering of qualified judgments in order to hold sureties.

I have examined those cases with considerable care and find a notable diversity between the Statute of Massachusetts and that of Maryland in a very material point, that is in the condition of the bond given to dissolve

the attachment. Under the Massachusetts Statute the bond to dissolve the attachments with the condition: "To pay the plaintiff the amount which he may recover within thirty days *after final judgment*." Braly vs. Boom, 116 Mass., 528.

The condition of this bond of the statutory attachment dissolving bond in Maryland says, "any judgment," not a final judgment, but any judgment— no broader terms could possibly be used. "Any judgment" means *any judgment*. Therefore, under the literal meaning of the words of this bond a qualified judgment like this would be included.

Then I find another material discrepancy between the jurisprudence of Massachusetts in this particular class of cases and that of our State. In Massachusetts it is held that the attachment bond "does not become of the nature of a debt until the contingency arises, to wit, a judgment valid against the principal, and which he is bound to pay," etc.

Carpenter vs. Turrell, 100 Mass., 453.

In Maryland, on the contrary it is distinctly laid down that it is only the right to maintain the suit that does not arise until condition broken, "but the legal debt of the obligor" (surety in that case) "was contracted by the bond alone." State vs. Culler, 18 Md., 431.

Notwithstanding the high authority of the Massachusetts decisions in general and the justices of the eulogium passed upon them by the learned counsel for the defendant in his brief, I must humbly submit, irrespective of these discrepancies between their statute and ours, between their construction of attachment bonds and ours that the decision in the leading case, Carpenter vs. Turrell, 100 Mass. 453, is one which does not suit the latitude, and that for two reasons:

(1) It is in plain contravention of our Act of 1763 (Code, Art. 24, Sec. 16), as expounded and emphasized by Chief Justice Taney.

(2) It takes no account of the Maryland practice of rendering qualified judgments, in a variety of special cases.

I think the occasion has arisen for adding to the family of qualified judgments already settled in our State from the most ancient times, a new member

with a strong family likeness furnished to us by the practice in Illinois, which has been decided by the Supreme Court of the United States to be in harmony with the Federal system of bankruptcy.

Although this is the first time the question has arisen in the State of Maryland, and I recognize the difficulty of the case, I feel it is my duty to decide that that practice is a proper practice, and one which should be followed by this court for the reasons stated, which are substantially the same as those announced at the time the demurrer was overruled.

The whole matter is capable of being summed up in a very few words.

It appears to be more just and more consistent both with Maryland jurisprudence and with the express provision of the Federal Bankrupt Law (that the liability of the surety shall not be altered by the bankrupt's discharge, Section 16A), to follow the enabling doctrine of Illinois rather than the restrictive doctrine of Massachusetts.