(Decided 4th March, 1870.)

# In the matter of the Insolvent Estate of Conrad Leiman.

*Insolvency—Express Trust—Statute of Limitations— Allowance of Counsel's Fees—Subsequent Purchaser with knowledge of a Prior Unrecorded conveyance.*

Under the insolvent laws of this State, the property of the insolvent is vested in the trustee appointed by the Court. The trust thus created, is an express trust for the benefit of the creditors of the insolvent, who are such at the date of his application, and their claims, unless then barred by the Statute of Limitations, are not afterwards, during the execution of the trust, affected by lapse of time.

Where the trustee in insolvency, upon the application of the creditors, refuses to institute proceedings to set aside a conveyance from the insolvent, as being in fraud of creditors, and one of the creditors in behalf of himself and others, files a bill for that purpose, and employs counsel to prosecute the suit, and the conveyance is finally set aside, the fee charged by the counsel so employed, should be allowed out of the insolvent estate.

Knowledge in fact of a prior unrecorded conveyance, is equivalent to regis-
tration, and the purchaser of the property with such knowledge, is not a
*bona fide* purchaser without notice.

APPEALS from the Court of Common Pleas.

On the 30th of September, 1852, Conrad Leiman conveyed
certain leasehold premises to Harman Schaferman. On the
22d of May, 1854, Leiman applied for the benefit of the in-
solvent laws, and on the 2d of September following, obtained
his final discharge; William Seip was appointed his trustee.
On the 6th of January, 1857, Schaferman re-conveyed the
premises to Leiman; this deed was recorded on the 9th of
June, 1860.

On the 4th of December, 1857, William O'Brien, a creditor
of Leiman, filed a bill in the Circuit Court of Baltimore city,
to set aside the deed from Leiman to Schaferman, as being in
fraud of creditors; and such proceedings were had, that by a
decree of the Court of the 20th of September, 1862, the deed
was declared void; and on an appeal from this decree, it was
affirmed. (*Vide* 28 *Md.*, 565.) Pending these proceedings,
on the 29th of March, 1860, Harman Schaferman conveyed
to Wm. H. Weaver and George Voyce, as tenants in common,
a portion of the property which had been conveyed to him by
Leiman; subsequently Weaver became entitled to the interest
of Voyce. On the 25th of May, 1861, for the consideration
of one dime, Conrad Leiman conveyed all his interest and
estate in the property, which had been re-conveyed to him by
Schaferman, to his son George W. Leiman.

Seip, the trustee in insolvency of Leiman, having died,
William H. Dawson was, on the 29th of April, 1868, ap-
pointed trustee in his stead; he sold the property in question,
and the sale was finally ratified on the 2d of September, 1868.

The trustee gave notice by publication to the creditors of
Conrad Leiman, who were such prior to his application for
the benefit of the insolvent laws, to file their claims, with the
vouchers, on or before the 21st of August, 1868.

Insolvent Estate of Conrad Leiman.

The claims of the appellants were as follows:

William H. Weaver, who claimed under the deed from Schaferman, to be entitled to the surplus arising from the sale of the property of the insolvent, after the payment of his creditors; he claimed also as assignee, in 1868, of a judgment from Schneider and Von Eiff for $200, with interest from March 25th, 1853. This claim was filed 16th of May, 1868.

Washington Page, $140.93, on promissory notes and open account, dated in 1851 and 1852—filed August 19th, 1868.

J. H. Lange, who claimed as assignee of a magistrate's judgment of one Eichelberger, against one Strohmeyer, obtained in 1852, for $59.05, in superseding which, it was alleged, that Leiman joined as security. Filed July 27th, 1868.

Samuel Harman, $157.64, on open account, with nearly sixteen years' interest—filed September 8th, 1868.

Harman Classen, on judgment for $152.00, with interest from June 2d, 1852—filed August 1st, 1868.

Henry Chinn, on three open accounts, the first dated August, 1850, for $116.48, the others dated 1852, for $10.70 and $150, with interest on each from its date—all filed in August, 1868.

Wm. O'Brien, who claimed as assignee of a judgment from Pendleton, dated June 9th, 1853, for $275.00, with interest, and who also claimed $84.24 costs in the Circuit Court, and $93.75 costs in the Court of Appeals—filed May 11th, 1868. (O'Brien's claim having been allowed below, he did not appeal.)

Frederick Eversman, who claimed first as assignee of a judgment from Solomon Brenner, dated January 13th, 1853, for $375, with interest; and secondly, for $75.00, paid by him July 14th, 1854, on a judgment against him by Schneider and Von Eiff, as security for Leiman—filed March 27th, 1869.

Patrick M'Laughlin, Esq., who claimed $500 for professional services rendered as solicitor for Wm. O'Brien.

George W. Leiman, who claimed under the deed from his father, dated 25th of May, 1861, the surplus of the insolvent's estate, after the payment of such claims and expenses as the law required to be paid.

To the foregoing claims of Weaver, Page, Lange, Classen, Harman, Chinn and Eversman, the Statute of Limitations was pleaded by George W. Leiman, as also by Weaver, his own claim excepted.  O'Brien's and four others were further excepted to, because not sufficiently authenticated; Mr. M'Laughlin's, because the same was not due by the insolvent estate, nor were the services rendered for the same at the instance of any one authorized so to do, and the claim itself was not sufficiently proven.  George W. Leiman and William H. Weaver each claimed, under their respective deeds, the balance of the insolvent's estate, after such credits as the Court should allow.

The Court below ordered to be made, and ratified, an account allowing all costs and expenses, the claims in full of O'Brien and M'Laughlin, and the balance of $2,708.51 to George W. Leiman.

The rejected creditors appealed from the disallowance of their claims.  George W. Leiman and Weaver appealed from the allowance of the claims of M'Laughlin and O'Brien, and Weaver appealed from the allowance of the surplus to George W. Leiman.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ROBINSON, J.

*Albert Ritchie*, for George W. Leiman.

The rejected claims are barred by limitations—this case is not within that class of trusts, from which the operation of the Statute is excluded.  The only trusts to which the Statute does not apply, are such as are technical and continuing, which are not cognizable at law, and are exclusively within the jurisdiction of equity.  *Young and Wife vs. Mackall*, 4 *Md.*, 362;  *Oehler vs. Walker*, 2 *H. & G.*, 323;  *Berry vs. Pierson*, 1 *Gill*, 234.

In the trusts referred to, the question always arises between the trustee and *cestui que trust*. Crook, et al. vs. Glenn, et al., 30 *Md.*, 55. *Between them* the statute does not operate, because of the fiduciary relation which exists. But *here*, and in every insolvent case, the question of the allowance of a claim comes up between the creditor on the one hand, and another creditor, or the debtor, or his heir, or his representative, or some one else having an interest in the estate, on the other. No fiduciary or confidential relations exist between them. How, then, can the principle apply?

Again, in insolvent estates who are the *cestuis que trust?* Not all who *claim* to be creditors, but only such as, in law and fact, *are* creditors. The fact of creditor or not is to be established by proof and filing of the claim, before the period has elapsed when the law presumes payment, and, from considerations of public repose, interposes the statute. The trustee is not a trustee for any creditor, however *bona fide*, who never files nor proves his claim, nor even for one who might file, but fail to prove it. When the claim is properly filed and proved, *then* the creditor becomes a *cestui que trust*, and, no matter what time might afterwards elapse before distribution, the claim could not be barred. But it is only at *this* point that the statute ceases to operate. Until a creditor complies with the law, and establishes his right as such, by proving and filing his claim within time, he is nothing but a stranger to the fund and to the trustee.

On principle, therefore, it is clear that the Statute does apply. It is an established rule in equity that the Statute of Limitations runs against a claim, or debt down to the time when it is exhibited. *Ohio Life Ins. Co. vs. Winn & Ross*, 4 *Md. Ch. Dec.*, 253; *Strike vs. McDonald*, 2 *H. & G.*, 238; *Hall's Adm'r vs. Cresswell*, 12 *G. & J.*, 36; *Welch vs. Stewart*, 2 *Bl.*, 41.

So that, whether on the schedule or not, limitations run until the vouchers are filed. Were it otherwise, the mere application in insolvency (followed by a discharge) would

work an indefinite suspension of the Statute, and a negligent creditor would actually receive a premium upon his *laches*.

The right of Leiman to plead the Statute of Limitations is settled, if authority were needed, by *Strike vs. McDonald.* The Court there say that "the debtor," "or his heir," has so manifest an interest in the estate that there seems never to have been any difference of opinion as to his right to plead the Statute. If the debtor can plead it, of course his grantee or assignee can do so. Any one who establishes an interest in the fund has a standing to plead the Statute.

Was George W. Leiman entitled to the surplus? The property of an insolvent vests in the trustee for the benefit of his creditors, with, of course, a continuing equitable interest in him in respect to any surplus that might remain. After payment of all lawful expenses and rightful claims, should there be a balance, it goes to the insolvent. Whoever represents his title, then, has the same right to plead the Statute and receive the surplus.

The question is, does George W. Leiman or does Weaver now represent the title of Conrad Leiman to this surplus?

The pivot of that question is the re-conveyance from Schaferman to Conrad Leiman, in 1857, three years before the deed under which Weaver claims. Of the existence of that deed, though not recorded until 1860, the evidence shows Weaver to have had actual knowledge, and the effect of it, therefore, as to Weaver is precisely the same as if it had been recorded.

Actual knowledge of the existence of an unrecorded deed, or such notice as is sufficient to put a party upon inquiry, is equivalent to registration. *Code of Pub. Gen. Laws, Article 24, section 19; Moncrieff vs. Goldsborough, 4 H. & McH., 281; Hardy and Talburtt vs. Summers, 10 G. & J., 324; Price & Bevan vs. McDonald, 1 Md., 403; Winchester, et al. vs. Balt. and Susq. R. R. Co., 4 Md., 238; Johns vs. Scott, 5 Md., 81; Cooke's Lessee vs. Kell, et al., 13 Md., 469.*

The claim of O'Brien ought not to have been allowed, because it was not properly proved.

The Court below had no authority to allow the fee of $500 to Patrick M'Laughlin, Esq.; he was retained by O'Brien, and his services were rendered in pursuance of such retainer, not on behalf of the estate. His services in O'Brien's case may have incidentally been of advantage to the estate, and so, in that case, he may have procured the settlement of some question that was of incidental advantage to parties perfect strangers to the record; but he has no more claim upon the stranger in the one case than in the other.

*George H. Williams,* for William H. Weaver.

George W. Leiman's proof is defective and he has not made out his title.

His pretended deed is voluntary, based on no consideration, and not duly attested as required by the Code of Pub. Gen'l Laws, Art. 24, sec. 10.

Weaver was a purchaser, *bona fide,* by deed duly recorded, and the attempt made to charge him with express notice, is by tainted witnesses, contradictory, and wholly fails. And even if he had express notice, it was of an instrument so fraudulent as to entitle the claimant under it to no consideration whatever. *Stewart vs. Iglehart,* 7 *G. & J.,* 132; *Cushwa, et al. vs. Cushwa's Lessee,* 5 *Md.,* 50, &c.; *Freeman vs. Sedwick,* 6 *Gill,* 29.

George W. Leiman, the son, as grantee under a deed of which he had no knowledge, for which he gave no consideration; made when he was a boy, and who does not *even yet know why it was made,* must occupy the position of his father, the grantor; who, on the authority of the above cases, could not be heard in a Court of Justice to attack Weaver's deed from Schaferman. And even if the family testimony of wife, daughter and son, could be credited, so as to put the property into their pockets, in their attempt to show Weaver had notice, (and it is submitted that, under the other proof in this cause, such credit cannot be given,) yet still *"in pari delicto potior est conditio defendentis."*

Insolvent Estate of Conrad Leiman.

That all the claims to which limitations are pleaded, (O'Brien's excepted, as filed in time,) are barred, is now the settled law of this State. *McDowell vs. Goldsmith,* 24 *Md.,* 229, &c.; *Strike's Case,* 1 *Bl.,* 94; *Welch vs. Stewart,* 2 *Bl.,* 41; *Hall vs. Cresswell,* 12 *G. & J.,* 48.

For the allowance of the claim of P. M'Laughlin, Esq., there is no precedent. He was counsel for O'Brien only, whose claim is admitted. O'Brien should therefore compensate him.

*Louis Hennighausen* and *Patrick M'Laughlin,* for Harman, Lange, Page, Chinn and O'Brien.

The decree in the creditor's suit of *O'Brien vs. Schaferman,* to which Harman, a creditor, was a party, established his claim, and the claims of all the creditors who were parties to it, to the full extent thereof, unless the decree expressly limited the amount of the claim established, or pointed out the complainants whose claims were to be allowed.

A general decree establishes the claims of all who have been made complainants previous to the date of the decree. *Strike's Case,* 1 *Bland,* 68; *Hammond vs. Hammond,* 2 *Bland,* 359; *Crapster vs. Griffith,* 2 *Bland,* 23, 24; 2 *Danl. Ch. Practice,* 1513; *Griffith vs. Reigart,* 6 *Gill,* 445.

The Statute of Limitations cannot be pleaded in bar of the claims of Lange, Page, Chinn and Harman.

The Statute had not barred any of their claims at the time Conrad Leiman applied for the benefit of the Insolvent Laws.

The application of Conrad Leiman for the benefit of the Insolvent Laws, was made on the 22d day of May, 1854, and the Insolvent Act of 1854, ch. 193, was passed on the 10th day of March of that year, and was made to take effect from the date of its passage; therefore the proceedings in this case, so far as insolvency is concerned, must have regard to and be governed entirely according to that law. The applicant for the benefit of the Insolvent Laws conveys his property to his trustee. *Act of* 1854, *ch.* 193, *sec.* 2. The title

to property fraudulently conveyed, vests in the trustee as effectually as if the same had been specified in the schedule. *Act of* 1854, *ch.* 293, *secs.* 2, 7.

The property in this case, when it came into the hands of the trustee, had impressed upon it an express trust, and having been held upon that trust, the Statute of Limitations cannot be set up as a bar to the claims of the *cestuis que trust*, the possession of the trustee being the possession of the *cestuis que trust.* 1 *Salkeld*, 154, *Anon; Jamison vs. Chesnut*, 8 *Md.*, 34, 39 ; *Cushwa vs. Brewer*, 27 *Md.*, 288, 294, 317, 319, 320; *Coster vs. Murray*, 5 *John. Ch.*, 522, 531.

This doctrine is clearly exemplified in cases of persons claiming from an administrator the residue of the estate or from the executor a legacy. *Lindsay vs. Lindsay*, 1 *Dessau.*, 150; *Carr vs. Cobb*, 7 *Danna*, 417 ; *Blue vs. Patterson*, 1 *Dev. & Batt.*, 457, 458 ; *Bird vs. Graham*, 1 *Iredell*, 196 ; *Nelson vs. Cosmoele*, 11 *Gratt.*, 724.

The creditors of Conrad Leiman have had no remedy at law as against him, since he applied for the benefit of the insolvent laws, and had they sued him on their claims since that date, they would have been non-suited. *Act of* 1854, *ch.* 293; *Buckey vs. Culler*, 18 *Md.*, 418, 433. Nor could they have sued the trustee on the claims in any Court, until after the same had been audited and the account ratified, and until they had given notice to the trustee. *Williams vs. Williams*, 3 *Md.*, 163, 167. As, until he has notice of the ratification, there is no breach of trust in not paying the creditors, and, until guilty of a breach of trust, he is not liable to be sued. *Hill on Trustees*, 518.

The creditors were not bound to have filed their claims in equity ; as nothing could come into that Court from the estate of the insolvent that could be applied to the payment of their debts. *Alexander vs. Gheislin*, 5 *Gill*, 138; *Waters vs. Dashiell*, 1 *Md.*, 472; *Manahan vs. Sammon*, 3 *Md.*, 463 ; *Jamison vs. Chesnut*, 8 *Md.*, 34, 39; *Zeigler vs. King*, 9 *Md.*, 330, 335.

Is there any obligation, under our laws, upon the creditors to file their claims in the Insolvent Court before notice to them? Their claims cannot have limitations attached to them when presented in the Court of Common Pleas, because the Act of Assembly has taken away their remedy at law, against their debtor. *Buckey vs. Culler,* 18 *Md.,* 418, 433.

Therefore the Court cannot regard the pleas in obedience to the Statute. Neither can the plea be applied by analogy to the Statute, as the trustee does not hold by virtue of any trust created by implication or construction of law. *Hill on Trustees,* 265. This case is not like that of a creditor's bill in equity. There each party is represented by himself alone, and he has no representative in Court until he files his claim. In this case the trustee represents the creditors. *Jamison vs. Chesnut,* 8 *Md.,* 34, 39.

Had the trustee alone filed the bill in equity, to set aside the deed from Leiman to Schaferman, as he could and should have done, instead of O'Brien, (*Lewis vs. Gardner,* 7 *Gill,* 397,) what would have been the result? He would certainly have represented all the creditors; and as he was acting for them and on behalf of their claims, they could not have been in default for not having acted themselves; and as it would be by virtue of their claims that he would have acted, and in that capacity he would have defeated the Statute of Limitations, it is not now allowable for the same parties to plead it against the creditors.

That the trustee did not perform his duty by filing the bill, was not the fault of the creditors, for he was requested so to do. And as he was made a party to the bill, and forced against his will to represent the creditors, the Court will hold him representing them when in Court as defendant, so far as limitations is concerned, to the same extent as if he had been sole complainant.

*Spottswood Garland,* for Eversman.

*Louis Hennighausen,* for M'Laughlin.

The services rendered by P. M'Laughlin, the solicitor in the cause of *O'Brien vs. Henry Schaferman, et al.,* resulted to the benefit of the trust fund in this cause. O'Brien, a creditor of the insolvent estate, had requested the trustee thereof to take the necessary legal steps for the recovery of the property, to which he, as trustee of the insolvent estate, became entitled. The law vested in him the title and right of possession to all the estate of the insolvent at the time of his being adjudicated an insolvent. *Zeigler vs. King,* 9 *Md.,* 332; *Act of* 1854, *ch.* 193, *secs.* 1 *and* 2.

The trustee refused and neglected to take such steps. O'Brien, by Mr. M'Laughlin, his solicitor, then filed a bill in behalf of all the creditors of Conrad Leiman, the insolvent. Samuel Harman, another creditor of said Leiman, afterwards, by his application, became a party complainant to said bill. They were successful in exposing the fraud of the insolvent, and a decree was passed declaring a deed of assignment from Leiman to Schaferman null and void, as against all' the creditors of Leiman. But no decree could have been passed for the sale of the property in equity, or for the application of the proceeds of a sale to the satisfaction of the creditors, who had filed their claim in that suit. The case differed from an ordinary creditor's bill, for the reason that there could be no trustee. *Zeigler vs. King,* 6 *Md.,* 335; *Alexander vs. Ghiselin, et al.,* 5 *Gill,* 179.

The trustee of the insolvent estate took possession of the property, subject to the future adjudication of the Court of Insolvency. O'Brien and Samuel Harman did not, by that suit, acquire any greater interest or right in the trust fund of the insolvent estate than any of the other creditors had. The suit was and only could have been directly in the interest of the trust fund. Their interest was indirect, and subject to the future adjudication of the Court of Insolvency.

The trustee, by the long-established practice in equity and insolvent proceedings, would have been allowed a counsel's

fee in a case like the present. *Nelson vs. Pierson,* 8 *Md.,* 301; *Hill on Trustees,* 572, 573, (*margin;*) *Macnamara vs. Jones, Dick.,* 587; *Johnson vs. Telford,* 3 *Russ.,* 477.

In this case, it was the duty of the trustee to have done what O'Brien, by M'Laughlin, his solicitor, did for him. The services were for the benefit of the trust fund in his possession, and the benefit thereof accepted by him. And the fund should therefore be made to bear the expense of the fee charged by Mr. M'Laughlin, through whose efforts the fund was secured for the creditors of the insolvent.

*Oregon R. Benson* and *Thales A. Linthicum,* for Classen.

The exceptions made to Harman Classen's claim, by Wm. H. Weaver and Geo. W. Leiman, are made upon the ground that the claim is barred by limitations. No person can raise or urge the Statute of Limitations, or interpose any objection against the claim of a creditor of an insolvent debtor against the estate, unless such person be a creditor or otherwise interested in or entitled to a portion or the entirety of the proceeds of such estate. *Alexander's Chan.,* 143; *McCormick vs. Gibson,* 3 *G. & J.,* 12. The claims of the parties upon the fund are several and distinct, and the issue as to the allowance of any particular claim must be determined only as between the parties objecting to it, and it is necessary for the validity of such objection, that the party making it shall first establish his own interest in the fund.

The claim of W. H. Weaver is based upon an assignment to himself and Geo. Voyce from Schaferman, dated March 29, 1860, and recorded the same day, which refers to the deed to Schaferman of September 30, 1852, and was executed after the bill of O'Brien was filed, (December 4, 1857,) to set aside the deed of September 30, 1852, for fraud, and he and Voyce are chargeable with notice of the fraud alleged in said bill, and took the property subject to the decree passed thereon, and take only such interest under these assignments as Schaferman possessed in the property, and that Schaferman had

no interest, is presumed to be settled by the case of *O'Brien vs. Schaferman*, 28 *Md.*, 565. That deed being set aside and annulled, became inoperative to give title to Schaferman, and all the right and title of Leiman, at the time of the execution of the deed by virtue of the insolvent law, vested in the insolvent trustee for the benefit of his creditors. *Code, Art.* 48, *sec.* 7; (1854, *ch.* 193, *sec.* 7.) And this operation of the insolvent law relates back to the fraud contemplated, and avoids all conveyances made to defraud creditors, and confers upon the insolvent trustee, a prior and superior title to that of the grantee, and attaches to the property as being that of the insolvent, and not of the grantee, under which he may bring ejectment and recover without resorting to a Court of Equity to have the deed set aside. *Trumbo vs. Blizzard,* 6 *G. & J.,* 18.

Leiman and Schaferman were both guilty of the fraud in the making and execution of the deed, and the purchasers under Schaferman and Leiman stand affected with notice of that fraud, and in respect of the derivative deeds from them, stand in no better condition than they. The representative of the assignor stands in no superior position to that of the assignor, from whom he must deduce title, and it is clear that neither Leiman nor Schaferman, as a plaintiff, can successfully invoke the aid of a Court of Law or Equity to give effect to the deed of September 30th, 1852, nor, as defendants, resist the operation and consequences of their own act. The Courts will not interfere in behalf of either, unless such non-interference will have the effect of promoting the original design of fraud. *Cushwa vs. Cushwa,* 5 *Md.,* 52.

The decision of this Court in *O'Brien vs. Schaferman,* 28 *Md.,* 565, has determined the character of the deed of September 30th, 1852, and has pronounced it void for fraud.

If Leiman took any interest under the deed of re-conveyance to himself from Schaferman, dated January 6th, 1857, notwithstanding his disclaimer in his answer, his rights were arrested by the insolvent law, and he could not assign in fraud of creditors. The deed of September 30th, 1852, is void for

fraud in fact, and his subsequent creditors are to be provided for out of that property ; and to that end, Leiman being dead, administration is necessary, so that such creditors may be allowed the opportunity to file their claims — *Williams vs. Banks*, 11 *Md.*, 198—or notice should be given to such creditors to bring in their claims by the trustee in insolvency. And as to the creditors of the insolvent at the time of his application, their rights are expressly saved by *Code, Art.* 57, *sec.* 8, 1814, *ch.* 122, *sec.* 3, or under 1854, *ch.* 193, as against after acquired property.

And the deed from Conrad Leiman to Geo. W. Leiman is inoperative as a deed, being not properly executed, to pass title, and can only operate as an agreement to assign, which cannot be enforced as such agreement, because it is lacking the essential ingredients of *bona fides*, and adequate consideration. *Smith vs. Crandall*, 20 *Md.*, 482.

Neither Geo. W. Leiman nor W. H. Weaver, the alleged assignees of Conrad Leiman, have any interest in this estate by reason of the several assignments to them respectively, because the property intended thereby to be assigned, vested absolutely in the insolvent trustee, and the deeds whereby they respectively claim said property or the proceeds, are null and void to all intents and purposes. And the several deeds to Geo. W. Leiman and W. H. Weaver being absolutely null and void under the insolvent laws, neither of them took any interest thereunder, and are consequently strangers to the matter, and the plea of limitation interposed by them to the claim of Harman Classen cannot avail to defeat his claim.

Under the insolvent laws of this State, the estate of the insolvent vests in the trustee for the benefit of all creditors existing at the time of the application, and this trust is an express statutory trust, which continues until the creditors are satisfied, or the trust fund is exhausted ; and the Statute of Limitations is no bar to the claim of any creditor being such at the time of application, against the funds in the hands of

the trustee. *Selby vs. Magruder*, 6 *H. & J.*, 459; *Bank of U. S. vs. Beverly*, 1 *Howard*, 134.

The Statute does not run against the creditors of a bankrupt. *Ex parte Ross in re Coles*, 2 *Glyn. & Jam.* 46 *and* 330; nor against those of an insolvent. *Minot vs. Thatcher*, 7 *Met.*, (*Mass.*,) 348; *Willard vs. Clark*, 7 *Met.*, 435; *Ortram vs. Curtis*, 1 *Cushing*, 461; *Barton vs. Tattersall*, 1 *R. & M.*, 237.

The trustee takes and disposes of the trust property discharged of all incumbrances and liens, and the fund realized is charged with the payment of such claims in place of the property, and this remedy being conferred by statute, cannot be barred by limitations. *Carter vs. Dennison*, 7 *Gill*, 176; *Eschbach vs. Pitts*, 6 *Md.*, 71; *Newcomer vs. Keedy*, 2 *Md.*, 19; *French vs. O'Neale*, 2 *H. & McH.*, 407; *Ward vs. Reeder*, 2 *H. & McH.*, 145; *Planters' Bank vs. Bank of Alexandria*, 10 *G. & J.*, 354, 355.

ROBINSON, J., delivered the opinion of the Court.

The main question in these appeals is, whether the Statute of Limitations continues to run against the creditors of an insolvent debtor, after his application, and before an audit and order of the Court distributing the insolvent estate. Important as this question is, it comes now before this Court for the first time for decision. In the absence, however, of direct authority to guide us, we think there can be but little difficulty in its determination upon principle.

It is unnecessary to cite authorities in support of the long-established doctrine that, as between the *cestui que trust* and *the trustee*, in the case of an *express subsisting* trust, length of time constitutes no bar to relief. Such is the *privity* existing between them the possession of the one is the possession of the other, and if the *trustee* fails to perform the trust, his possession is not adverse, but according to his title. *Lewin on Trusts and Trustees*, 612; *Hovenden vs. Lord Annesley*, 2 *Sch. & Lef.*, 633.

In regard, however, to *implied or constructive trusts*, arising by operation of law, the rule is different, because it rarely happens that such *trusts* are. admitted or recognized by the parties; and, moreover, the facts out of· which they spring, necessarily, from their very nature, pre-suppose an adverse claim of right on the part of the trustee. *Hill on Trustees*, 264. The remedy, therefore, of the *cestui que trust* in such cases, is put upon the same footing of other equitable rights, and although the Statute of Limitations in terms only embraces *legal actions*, yet, in all cases of concurrent jurisdiction, where a party has a legal and equitable remedy in regard to the same subject-matter, Courts of Equity obey the law, and give to the Statute the same effect and operation in the one Court as in the other. *Dugan vs. Gittings*, 3 *Gill*, 138; *Hertle vs. Schwantze*, 3 *Md.*, 383; *Kane vs. Bloodgood*, 7 *Johnson Ch. Rep.*, 90. The question, therefore, as to whether the Statute operates as a bar in these appeals, must depend upon the nature and character of the trust created by the operation of the insolvent laws of this State, for it is clear, by all the authorities, that if it be an *express* trust, the plea of the Statute cannot avail as against the *cestuis que trust*.

Now, by the insolvent laws of this State, the debtor, in consideration of his discharge from the payment of his debts, is required to convey and deliver to a trustee, appointed by the Court, all of his property, of every kind and description, in trust for the benefit of creditors, being such at the time of application in insolvency, and, for the faithful performance of this trust, the trustee is obliged to give his bond, with approved security. The property thus being vested in the trustee, is no longer within the reach of process by the creditors, and the insolvent, being discharged from the payment of his debts, is no longer liable to suit, and the trustee, being answerable only for a breach of trust, no proceedings can be instituted against him until the ratification of the audit, because, until then, and notice thereof, he is not guilty of a breach of trust. *Williams vs. Williams*, 3 *Md.*, 163; *Buckey vs. Culler*,

18 *Md.*, 418.   It is clear, therefore, that the rights of credi-
tors must be worked out through the medium of a trust, the
property affected by which, the Code provides, shall be dis-
tributed according to the principles of equity, and the trustee
thereof subject to the same control of the Court as trustees
appointed by a decree in equity.   *Sections* 10 *and* 12, *Article*
48 *of the Code of Public General Laws.*

Here, then, is an express subsisting trust, created by statu-
tory enactment, the *uses, terms* and conditions of which are
declared, the property affected by the trust ascertained and
defined, and the *cestuis que trust*, namely, the creditors of the
insolvent at the time of his application, designated with as
much certainty and precision as if they were severally named
in the deed of trust.   The acts of the trustee in converting
the property into a fund for distribution, and in preparing
the subject-matter of the trust for the action of the Court,
are to be considered as the active assertion of the rights of
the creditors, the *cestuis que trust* as against the property, and
it cannot be that the delay incident to the execution of the
trust, shall work to their prejudice or injury.   And hence, in
*ex parte Ross & Hooper*, in the matter of *Coles, a bankrupt*, 2
*Glyn. & Jam.*, 46, the Vice-Chancellor said, " that after a
commission issued, the Statute of Limitations did not run
against a creditor; that the commission was a *trust* for the
benefit of all the creditors, and it was a known principle that
the Statute did not run against a trust."   This decree was
upon appeal, affirmed by the Lord Chancellor, who held
that, " whatever may be the technical objection, the effect of
the commission is clearly to vest the property in the assignees
for the benefit of the creditors; they are, therefore, in fact,
trustees : and it is an admitted rule, that unless debts are
already barred by the Statute of Limitations when the trust
is created, they are not afterwards affected by lapse of time."

Also, in *Minot vs. Thatcher*, 7 *Metcalf*, 348, it was held
under the insolvent laws of Massachusetts, that the Statute
did not run against the creditors of the insolvent after the

Insolvent Estate of Conrad Leiman.

publication of the messenger. Justice DEWEY, in delivering the opinion of the Court, said: "By force and effect of the appointment of a messenger, and the publication thereof conformably to the statute, the property of the insolvent debtor is sequestered for the benefit of all the then existing creditors. After such a publication, a suit by a creditor would be of no avail, as the property is all transferred to the assignee, and the body of the debtor is to be discharged from arrest on execution. The debts presented for allowance against the insolvent, are to be considered with reference to their validity at the date of the publication by the messenger, and unless barred at that time, they must be allowed." Any other rule would be obviously unjust. Take the case of a creditor, whose debt will not be barred for at least a year; he knows that, under the Statute, he has until the last day of the year within which to bring suit; but, before that time, the debtor becomes insolvent, and his right of action is gone. Now, if the principle contended for by the appellee be correct, and more than a year should elapse before the insolvent estate is ready for an audit, the insolvent, or his assignee, could interpose the plea of the Statute, and thus defeat the claims of · creditors. In this view we do not concur, but are of opinion that after the application in insolvency, and during the execution of the trust, the Statute does not operate against the then existing creditors.

This construction certainly accords with the plainest principles of justice in these appeals. Here was attempt on the part of the insolvent debtor to cheat and defraud his creditors. Having fraudulently conveyed his property for that purpose, he applies for the benefit of the insolvent laws, and declares, in the schedule annexed to his petition, he has no property liable for his debts. After his final discharge, Schaferman, the *fraudulent grantee*, re-conveys the property to *Leiman, the insolvent debtor*, and he in his turn, in consideration of *one dime*, conveys it to *his son*. The trustee in insolvency refuses, upon the application of the creditors, to file a

bill in equity assailing the fraudulent conveyance, and the creditors are obliged themselves to institute proceedings. After a long and protracted litigation, extending from the Court below to the Court of last resort, the conveyance is condemned as being fraudulent, and the property directed to be sold; and, when the proceeds of sale are brought into Court for the purpose of being distributed among the creditors, the plea of limitations is interposed by the *assignee* of the *insolvent debtor* on the one hand, and by the *assignee* of the *fraudulent grantee, Schaferman,* on the other. If the plea of the Statute could avail under such circumstances—if the delay incident to the execution of the insolvent trust, and occasioned by the fraudulent acts of the very parties under which these assignees now claim, could operate to defeat the payment of honest creditors, it would indeed be a just reproach to the administration of the law. Whilst it is true that a Court of Equity extends a reluctant hand of relief in case of stale demands, where a party has slept upon his rights, and where time and long acquiescence have obscured the true nature and character of the trust, it will never visit upon a party the consequences of a delay for which he is in no wise responsible, nor hold him guilty of *laches* in not prosecuting his demands when there was no process by which they could be enforced.

The case is widely different from a creditor's bill, because there the creditor has no one to represent him until his claim is filed. Moreover the death of the debtor does not suspend the right of action on the part of the creditor, he may still sue the administrator or executor, and if there should be an insufficiency of the personal estate, he may file his bill for the sale of the real estate.

In *Strike's Case,* 1 *Bland,* 57, the proceeding was to set aside certain fraudulent conveyances, and for a sale of the property for the benefit of creditors, and although in the disposition of some of the questions which arose, the Chancellor likened it to a case of insolvency, the distinct question in

. regard to the Statute of Limitations raised by these appeals, did not arise, and cannot be said to have been directly passed upon. No such question was decided by this Court in *Strike vs. McDonald & Son,* 2 *H. & G.,* 191.

We are of opinion, therefore, that the Court erred in rejecting the claims of Herman Classen, Henry Chinn, John H. Lange, Washington A. Page, Samuel Harman and Frederick Eversman, and the order in each one of these appeals will be reversed. We have not considered the objections to the authentication of these claims, because from the opinion of the Court they do not appear to have been made at the hearing, and must be considered as having been waived. The claim of O'Brien, assignee, being allowed the order in that case will be affirmed.

We are also of opinion that the claim of Patrick M'Laughlin for professional services was properly allowed. If the trustee in insolvency had employed counsel to institute proceedings assailing the fraudulent deed · of the insolvent, the costs, and all expenses incident thereto, would have been a proper charge against the trust fund, and because he refused to discharge his duty, thereby compelling the creditors to take proceedings, is no reason why they should be held personally responsible. The order in that case will be affirmed.

The only remaining question is the title to the surplus, should there be any after the payment of creditors; and this must depend upon whether Weaver, assignee of Schaferman, had *knowledge in fact* of the *prior* unrecorded conveyance of Schaferman to Leiman, for if he had, then such knowledge is equivalent to registration. *Price and Bevans vs. McDonald, et al.,* 1 *Md.,* 403; *Winchester, et al. vs. Balt. and Susq., R. R. Co.,* 4 *Md.,* 231; *Johns vs. Scott,* 5 *Md.,* 81. It is unnecessary to examine here in detail the evidence upon this point, and it will be sufficient to say that we are of opinion that · Weaver, at the time of the assignment from Schaferman to him, had full knowledge of the prior assignment to Leiman. He is not, therefore, a *bona fide* purchaser without notice.

We are of opinion, therefore, that George W. Leiman, assignee of Conrad Leiman, is entitled to the surplus, if any, after the payment of the claims of creditors.

The case will be remanded with directions to the auditor to state an account, in conformity with the views herein expressed.

> *Order in each of the appeals of Classen, Chinn, Lange, Page, Sam'l Harman and Eversman, reversed, and the orders, in so far as they allow the claims of O'Brien and M'Laughlin, affirmed, and the order overruling the exception of Weaver to the claim of G. W. Leiman, affirmed.*

(Decided 4th March, 1870.)