CHARLES A. WEBB *v.* BALTIMORE COMMERCIAL BANK

[No. 34, January Term, 1943.]

*Decided March 17, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, and MELVIN, JJ.

*Hall Hammond* and *Clayton W. Daneker* for the appellant.

*Enos S. Stockbridge,* with whom were *Mullikin, Stockbridge & Waters* on the brief, for the appellee.

MELVIN, J., delivered the opinion of the Court.

The appellant (plaintiff) is seeking to recover through this suit in equity the proceeds of checks collected by appellee (defendant) for one of its depositors, upon which the endorsement is alleged to have been unauthorized and fraudulent. A breach of trust is also alleged and appellee's "knowing participation in it" amounting, it is claimed, to a conversion of funds belonging to appellant. From the order of Circuit Court No. 2 of Baltimore City sustaining the demurrer to the amended bill of complaint this appeal is taken.

The facts admitted by the demurrer are: Under date of October 28, 1936, an agreement, evidenced by a letter filed as an exhibit in the case, was entered into between National Wholesale Liquor Company, Inc., herein referred to as "National," and "A. L. Webb & Sons," 1309 West Baltimore Street, Baltimore, Maryland, whereby National agreed to compound and bottle whiskey and alcohol furnished by Webb, to ship the product immediately to any licensed buyer designated by the latter, and providing, in particular, that "all money, checks or drafts in payment of these deliveries will be given to you immediately in their original form." Pursuant to this agreement National made shipments to a company called "Car-Cal Winery," in Greensboro, North Carolina, from whom it received on this account a check dated September 2, 1937, for $500, drawn on a North Carolina bank, payable to the order of National, and belonging to Webb under said agreement. This check was endorsed "National Wholesale Liquor Co., Sidney M. Jacobs, President," and by him delivered to Sol Fehlden, who, as purchasing agent, had signed the agreement of October 28, 1936, on behalf of National. This check was cashed at

the place of business of one J. Morris Kopilnick, a relative of Fehlden. Kopolnick was at that time a depositor of the appellee bank, and deposited said check in his account there. The bank credited him with the amount of the check and thereafter collected the same from the drawee bank on or about September 8, 1937. On October 8, 1937, the Car-Cal Winery forwarded to National its check of that date, likewise drawn on a North Carolina bank, to the order of National in the sum of $194, on the same account as the $500 check and to be delivered to Webb under the aforesaid assignment. This check was endorsed "National Wholesale Liquor Co. by Sol Fehlden" and was cashed for him by the said J. Morris Kopilnick, who deposited it in his account in the appellee bank. Kopilnick was credited with the amount by the appellee, who, in turn, collected it from the drawee bank on or about October 15, 1937.

These endorsements, the amended bill alleged, were each unauthorized, void and of no effect. It is further alleged that neither Sidney M. Jacobs nor Sol Fehlden had any general or special authority to endorse or negotiate checks or commercial paper of the said National, other than for deposit in its regular account at the Maryland Trust Company, which was subject to three signatures; also, that neither National nor appellant received the proceeds of said checks directly or indirectly.

About the time of the deposit of the checks in question the officers of National denied the validity of the assignment of October 28, 1936, although they had recognized and acted upon its validity in constant practice for over a year. They "thereupon," denied to appellant information and access to information of various accounts assigned to him, and when, subsequently, receivers were appointed for National they likewise denied the validity of the assignment and refused appellant information as to the status of "various accounts inquired of by him." In June, 1940, the Circuit Court for Baltimore County passed an order upholding the validity of the said assign-

ment, and particularly ordering that as of July 13, 1937, there was a balance due by Car-Cal Winery of $974, which bill the appellant, as assignee, was authorized to collect, subject to any payments made by the debtor between said 1937 date and the date of the order (June 12, 1940).

The bill finally alleges that by reason of the information disclosed at the hearing, and by use of a certified copy of the court's order, appellant was, "for the first time," able to obtain information from various debtors as to the status of their accounts, including Car-Cal Winery, which revealed that said amount of $974 had been paid in full by the checks herein referred to. Thereupon appellant made demand on the appellee for the amount of the two checks, with interest, and was refused. This suit was filed July 11, 1941, asking the court to assume jurisdiction and also to order an accounting covering "all checks" payable to National, without specifying any besides the two above indicated, alleged to have been wrongfully endorsed and deposited with the appellee bank.

In passing upon the sufficiency of the bill of complaint, as questioned by the demurrer, it is to be noted at the outset that nowhere in the bill or in the "agreement" mentioned therein, filed as an exhibit, does the name of the appellant, Charles A. Webb, appear, nor is any information given showing his right to bring this suit. In the receivership case in Baltimore County the court's order, exhibited with the bill here, does mention "Charles A. Webb" as the "assignee of National Wholesale Liquor Company, Inc.," but predicates that designation solely upon the aforesaid agreement of October 28, 1936.

The appellant bases his standing in court now entirely upon this paper, and yet it shows on its face that said agreement was not with Charles A. Webb, of 1424 Philpot Street, Baltimore, as stated in the bill of complaint, but was with "A. L. Webb & Sons," 1309 West Baltimore Street. The court is left to assume that Charles A. Webb,

who has sued as an individual, has some interest in the case by virtue of this agreement with A. L. Webb & Sons, possibly as one of the sons or as a surviving partner, but there is nothing whatever in the record to support that assumption. The assignee of National is not the appellant, but on the pleadings is another party altogether.

Although no point was made of this in appellee's demurrer or in the briefs or the oral arguments, the court cannot ignore it and must, therefore, apply the rule that in order to sustain a bill the plaintiff must show an interest in the subject of the suit. As stated by this court in *Sellman v. Sellman,* 63 Md. 520, 522, the rule is: "It is a fundamental principle of equity pleading that, to entitle a party to sustain a bill, he must show an interest in the subject of the suit, or a right to the thing demanded, and proper title to institute the suit concerning it; and if such interest or right to sue be not fully shown by the bill itself, the defendant may demur. *Mitf. Eq. Pl.,* top pages 272, 329; *Sto. Eq. Pl.,* Secs. 728, 730."

This rule was applied, also, in *Anderson v. Cecil,* 86 Md. 490, 492, 38 A. 1074, wherein the court referred to it as an "elementary principle," and that because the facts in the record did not explain the interest of the complainants, the bill was fatally defective.

While this defect in the bill before us might have been cured by a seasonable amendment, the case was submitted to the lower court upon amended bill and demurrer thereto, without apparently having taken this point into consideration. In sustaining the demurrer the court did so without leave to the plaintiff to amend. If this were the only point involved on this appeal, appellant would be entitled to further amend his bill so that the cause might be determined on its merits. *Davis v. Clabaugh,* 30 Md. 508; *Roser v. Slade,* 3 Md. Ch. 91. However, there are other grounds, substantial and fundamental, for sustaining the demurrer, and these combined clearly

and fully justify the court's order dismissing the bill, without leave to amend.

The gist of the complaint is alleged "negligence" of the appellee bank and "its failure to exercise ordinary care in accepting for deposit and collecting checks payable to a corporation on the endorsement of a single officer, in the one case, and of a mere agent, in the other." Appellee is also charged with a "breach of trust for which it is liable to him" (appellant).

However, the facts alleged in the bill do not support the pleader's conclusions of negligence or breach of trust. These facts are, substantially, that the appellee bank's connection with this entire business was confined to its acts in accepting from one of its regular patrons deposits which included the respective checks in question, collecting them and crediting their depositor's accounts with the proceeds in regular course. This depositor, Kopilnick, is not charged in the bill with any fraud, nor is he identified in any way as being an officer or agent of the payee, National. Moreover, the bill expressly states that Sidney M. Jacobs, the president of the payee corporation, and Sol Fehlden, the purchasing agent who signed the agreement which is the basis of this suit, were authorized to endorse or negotiate checks for National "for deposit in its regular account in the Maryland Trust Company," although for no other purpose. The two checks in question, bearing the endorsement of the said president and the said agent, respectively, of the payee corporation, came to the appelle bank for deposit to the account of one of its patrons, with nothing about the checks, themselves, to put appellee on notice of any interest therein of appellant, or on notice of any infirmity in the instrument, or defect in the title of the prior endorser, Kopilnick. Not only was there no indication of bad faith in the transaction as it came to the appellee, but, on the contrary, there was upon it the stamp of regularity and good faith. Thus the appellee became a holder in due course of the checks in question

within the definition of the Negotiable Instruments Act, Code, 1939, Art. 13, Sec. 71.

Appellant alleges in his bill that appellee was guilty of a violation of "ordinary banking practice" in accepting for deposit these checks of the payee corporation endorsed, in one case, by its president, and in the other by its agent, without having first ascertained the fact that said endorsements were fraudulent and unauthorized. However, the basis of our decision in this case cannot be "ordinary banking practice" whether that is as alleged in the bill or not. For the court to so rule would mean imposing upon the working force of every such banking institution, in the course of its routine business of the day, the obligation of investigating the endorsement of every corporation's check which might be included in the day's deposits of a regular patron, even when these checks are complete and regular upon their face, and where the depositor is not in any way identified with the payee corporation. To base our decision upon such "ordinary banking practice" would be to extend the doctrine of negligence beyond the limits of reasonableness. or practicability in the banking field.

The other allegation of the bill upon which the appellant strongly relies is that the appellee, by its conduct in relation to these checks, knowingly participated in a breach of trust for which it is liable to appellant. There is no basis for this contention, however, in view of the fact that appellee had neither actual nor constructive notice of the agreement which is the basis of this suit. There was nothing about either of the checks which indicated the existence of any agreement collateral to it, or to put the appellee upon inquiry thereof. It is significant to note that at the time of the deposit of the checks in question, National, and subsequently its receivers, denied the validity of the assignment agreement of October 28, 1936, so that even if appellee had actually made inquiry of the payee corporation (National) no interest of appellant in the checks would have been

disclosed. *Blacher v. National Bank of Baltimore,* 151 Md. 514, 519, 135 A. 383.

It is to be emphasized, also, that an essential to liability in a case of this character is a showing of facts in the bill of complaint that the defendant's acts amounted to bad faith. Here the appellant was not a party to the checks, and for that reason, also, he is barred from claiming that the proceeds thereof in the hands of the appellee bank are impressed with any trust in his favor. Uniform Fiduciaries Act, Code, 1939, Art. 37A, Sec. 4.

The case of *National Union Bank v. Miller Rubber Co.,* 148 Md. 449, 129 A. 688, specially referred to by both appellant and appellee, is clearly distinguishable in both fact and theory from the case at bar. In the Miller case, and those analagous to it, the endorsements on the payee corporation's checks whereby an officer or agent thereof, who deposited the instrument in his own personal account and to his own credit, thus giving actual notice to the transferee of the questionable character of the transaction and putting it upon notice to inquire further. In the case at bar the depositor with the appellee bank was one of its regular patrons, not identified with the payee corporation in any way, and the proceeds of the checks were not applied to the individual purposes of the endorsing officer or agent. In short, the facts alleged in the bill fail to show that the appellee's acceptance of the checks for deposit was an act of bad faith. Under this test the appellee's status as the "holder in due course" of the checks is confirmed, and there is consequently no laibility on its part to the appellant.

The right to recover in this case is based on the Webb agreement with National, and appellant claims that as National's assignee he is subrogated to the rights of this corporation against the proceeds of the checks in the hands of appellee. Assuming the correctness of this position, he would also be subject to all defenses against National's claim, for, obviously, the rights of the assignee are no greater than those of his assignor. If either of

the endorsements of these checks had been unauthorized and the payee's funds diverted, the remedy would have been at law for money had and received, or by a bill in equity on the theory of a constructive trust impressed upon the proceeds of the checks in the hands of the appellee bank. Under either procedure the statute of limitations would have applied and National would, of course, have been barred from recovery in any suit filed after the statutory period.

It is an established principle of equity that where there is a constructive trust as to the proceeds of checks—and there could be no other kind of a trust applicable here—the statute of limitations will be applied in analogy to the law. In re *Insolvent Estate of Leiman,* 32 Md. 225, 3 *Am. Rep.* 132.

It is to be noted here that neither National nor its receivers made any claim whatever against the appellee for any alleged diversion of funds, and there is nothing in the record to indicate that appellant's assignor, National, disclaimed the act of its president and its purchasing agent in endorsing the checks involved in this suit. On the contrary, the facts indicate apparent acquiescence in these endorsements on the part of National.

Therefore, under either of appellant's theories of his case, his recovery is barred by limitations, in addition to the other fatal defects in his bill of complaint. The decree appealed from must, therefore, be affirmed.

*Decree affirmed, with costs to the appellee.*