OSBORN *v.* SWETNAM ET UX.

[No. 93, September Term, 1959.]

*Decided December 17, 1959.*

218

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

Submitted to BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

Submitted on brief by *Oscar R. Duley* and *Edgar L. Smith* for the appellant.

Submitted on brief by *Edward S. Digges, John H. Mitchell* and *Digges & Mitchell* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order sustaining a demurrer and dismissing a bill of complaint in four counts, filed June 25, 1958. Count I alleges that the complainant is a resident of the District of Columbia, and that the respondents are husband and wife, "bona fide residents of Prince Georges County, Maryland, since August, 1955," and "in the horse-racing business". In September, 1951, while he was "sick", complainant turned over to the husband $55,000 in cash upon the understanding that it would be "held in a safe place * * * to be returned * * * when he needed the .cash"; that the wife, but no one else, should be told "who the real owner was so that in the event either or both" Osborn or Swetnam were "in jail or were killed," the money would be returned to the complainant or his family. Swetnam took the money to the house in Washington where he resided, which was owned by Swetnam's father-in-law, and told the complainant it "had been hidden in the rafters in the attic". The complaint further alleges that both the respondents claim that the money disappeared in December, 1951, and so informed him in February, 1952, but they did not report the loss to the police until May, 1952. One DeMichele was then arrested and charged with taking the money, but was subsequently released without trial. In 1952, the respondents spent "huge sums of money", and the complainant believes and alleges that these expenditures were made out of funds belonging to the complainant. There are also general allegations of fraud and breach of trust. Respondents are alleged to have "wrongfully

withheld" the money from the complainant, after repeated demands. Among the expenditures mentioned was a purchase, in 1954, of a half interest in the house where they resided in Washington. The count concludes with prayers that the court decree that the respondents, who own a one-half interest in four parcels of real estate described therein, located in Prince George's County, hold the same, "subject to a resulting trust and/or constructive trust", that the court appoint trustees if necessary, and pass temporary and permanent injunctions against transfer of the parcels described, and to compel conveyance of the interests therein of the respondents to the complainant.

Count II prays an accounting for the $55,000, and a sale of the respondents' real and personal property. Count III seeks recovery of the money under the common counts, and demands judgment in the amount claimed, with interest. Count IV alleges a wrongful conversion of the money by the respondents in January, 1952, and likewise demands judgment.

The demurrer sets up lack of jurisdiction in equity, misjoinder, laches and limitations. The chancellor sustained the demurrer on the ground of limitations and laches. It was his view that since the bill alleges that the money was converted in January or February, 1952, (the date of the first demand for its return is not stated) the cause of action accrued more than three years before the institution of the suit on June 25, 1958. It seems clear that the alleged cause of action is for a conversion or breach of a bailment agreement, so that the period of limitations would be three years, under Code (1957), Art. 57, sec. 1. The same time would ordinarily be applied by analogy in equity, upon a theory of constructive trust, or for an accounting. Cf. *Rettaliata v. Sullivan,* 208 Md. 617, 621, *Crawford v. Richards,* 197 Md. 284, 287, and *Webb v. Balto. Commercial Bank,* 181 Md. 572, 581. However, the chancellor seems to have overlooked the allegation in the bill that the respondents have been *bona fide* residents of Maryland "since August, 1955". While not clearly stated, it may be inferred that, since it is alleged that the respondents were residing in Washington from 1951 through 1954, they

did not become residents of Maryland prior to August, 1955, after which time they are alleged to have resided in Maryland. Suit was filed within three years from that date. We think this allegation is sufficient, at least as against demurrer, to bring the case within Code (1957), Art. 57, sec. 5, as construed in *Mason v. Union Mills,* 81 Md. 446. As that case holds, neither the fact that the cause of action arose in another state, nor that both the parties are non-residents, would prevent the applicability of that section. If the action is commenced within the statutory period after the defendants are present in the State, limitations cannot be set up as a defense, except, perhaps, in a limited class of cases where the action is barred outright in the state where it accrued. Cf. *Miles v. McGrath,* 4 F. Supp. 603. The decision in the *Mason* case, although by a divided court, seems to be in accord with the weight of authority. See notes 83 A.L.R. 271, and 148 A.L.R. 732. We see no special grounds to support a finding of laches, as distinct from limitations, in the instant case.

But there are other grounds raised by the demurrer, on which we think the demurrer might properly have been sustained. We have held that under Maryland Rule 313, actions in tort and contract may be joined in one action, as independent or alternate claims. *Kirchner v. Allied Contractors,* 213 Md. 31, 36. However, we have never held that actions at law and suits in equity may be joined in one proceeding. Rule 1 d provides that "These Rules shall not be interpreted to affect the existing distinction between law and equity." Cf. *Bachman v. Lembach,* 192 Md. 35. However, it is not necessary to dismiss the entire bill because of the misjoinder. Rule 283. The complainant is simply put to an election as between relief at law or in equity. We think it appropriate to remand the case for further proceedings, which may include the granting of leave to file an amended bill of complaint, or if necessary, the transfer of the suit to the law side of the court under Rule 515. Cf. *Barnes v. Webster,* 220 Md. 473.

We think it proper, under Rule 885, to indicate our view that on the face of the bill we see no allegations that would

require equity to take jurisdiction. Cf. *Bachman v. Lembach, supra.* But as pointed out in a note to that case in 12 Md. L. Rev. 88, a case might be made out for equitable intervention under Code (1957), Art. 16, sec. 98. See also *Rettaliata v. Sullivan, supra.* While the bill in the instant case does not, we think, make out a case for an accounting, or establish a right to trace assets, or to proceed *in rem* against the parcels mentioned, it may be that it could be shown that a remedy at law would not afford complete and adequate relief. We leave the matter open. In any event, we think that, limitations not being a bar, a case is made out for relief at law, if not in equity, that calls for an answer.

> *Case remanded without affirmance or reversal, for further proceedings in accordance with this opinion, costs of this appeal to be paid by the appellees.*