## NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA

v.

## BANK OF AMERICA, N.A.

No. CIV.02–CV–3719.

United States District Court,
D. Maryland.

Jan. 15, 2003.

Robert W. Ludwig, Jr., Michael J Kresslein, Ludwig and Robinson PLLC, Washington, DC, for National Union Fire Insurance Company of Pittsburgh, PA., plaintiff.

Dennis P. McGlone, Brian L. Moffet, Stephanie D Cohen, Gordon Feinblatt Rothman, Hoffberger and Hollander LLC, Baltimore, for Bank of America, N.A., defendant.

## MEMORANDUM OPINION

SMALKIN, Senior District Judge.

This is an attempt to resurrect a dead wolf by dressing it in sheep's clothing, and it will not succeed. The matter is before the Court on the defendant's motion to dismiss. Because the issues have been fully and well briefed, no oral hearing need be held. Local Rule 105.6, D.Md.

By Memorandum Opinion and Order entered October 7, 2002, in *National Union Fire Ins. Co. of Pittsburgh, PA v. Allfirst Bank*, 225 F.Supp.2d 614 (D.Md.2002), Judge Nickerson of this Court dismissed, for lack of federal subject matter jurisdic-

tion, all claims asserted by the plaintiff against this defendant (there were others), by way of subrogation, concerning a check in the amount of $76,142.00, which was one of a series of checks drawn on a checking account maintained by the plaintiff's insured, Kaiser. A thieving employee (one Mack) had supplied Kaiser with the names of fictitious payees to whose order the checks were drawn. This is not an uncommon practice, and is one dealt with expressly with Uniform Commercial Code (U.C.C.). *See* U.C.C. sections 3–404 and 3–405. Working with a curiously named accomplice (Venus Baldwin), Mack caused the checks to be deposited in a number of banks, including the present defendant. The check underlying Count 1 was deposited into the account of a fictitious payee at a Bank of America branch in Jacksonville, Florida. But the tale, as to the Bank of America, does not end there. Apparently, the proceeds of this and other checks were subsequently wire transferred, by way of a transfer order in the amount of $113,231.65, from various accounts to a Bank of America account in the name of Venus Baldwin. A subsequent transfer of $75,000 from the Bank of America account was made to Venus's daughter, Krystal.

Count 1 of the present claim attempts to resurrect the claim as to the $76,142.00 check that was dismissed by Judge Nickerson for lack of federal subject matter jurisdiction, *National Union Fire Ins. Co. of Pittsburgh, PA v. Allfirst Bank,* 225 F.Supp.2d 614 (D.Md.2002). Perhaps recognizing the collateral estoppel effect of Judge Nickerson's finding regarding the amount in controversy, the plaintiff limits the cash amount sought in Counts 1 and 2 to $71,331.53, which is, of course, below the jurisdictional amount in diversity cases under 28 U.S.C. section 1332. (Of course, plaintiff's attempt to jack up its $71,331.53 claim to an amount equal to or exceeding the jurisdictional amount specified by inserting in the claim in Count 1 as "at least

$71,331.53" is wholly ineffectual. Jurisdictional amounts must be claimed in good faith, and, in light of Judge Nickerson's ruling, no amount could be claimed as to Count 1 exceeding $71,331.53 in good faith.)

The plaintiff goes on, however, to assert four more claims against Bank of America, which, it says, would entitle it to recover more than the jurisdictional amount of $75,000, and seeks to maintain the first count as within the Court's supplemental jurisdiction.

▪ The first of these new claims is for "money had and received," because the defendant has not returned to plaintiff (or Kaiser) any of the so-called "ill gotten funds." (Complaint ¶ 21.) No action lies against the defendant, as a matter of Maryland law, for money had and received under these facts. Whether or not the defendant was negligent in allowing money to be deposited into the Bobby Stevens Account, and/or later to be wire transferred, it retains not a penny of the money. Restitutionary remedies are inappropriate in such a circumstance. *See e.g. Plitt v. Greenberg,* 242 Md. 359, 363, 219 A.2d 237 (1966). *Dictum* from the case of *Webb v. Baltimore Commercial Bank,* 181 Md. 572, 31 A.2d 174 (1943), relied upon by plaintiff, is not to the contrary. And even that *dictum* referred to the possibility that an action for imposition of a constructive trust or for money had and received could lie for "the proceeds from the checks *in the hands of the* appellee bank." *Webb,* 181 Md. at 580, 31 A.2d 174. (Emphasis added.) Because the Bank of America *retains* none of the proceeds of the particular check at issue in Count 1, or of the Venus Baldwin account referenced above, there can be no action under Maryland law for money had and received, and Count 2 fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

■ Count 3 claims for conversion. Although the Uniform Commercial Code (U.C.C.) recognizes that general principles of common law are not extinguished by the Code, *see* U.C.C. section 1–103, that same provision of the Code recognizes that "particular provisions" of the U.C.C. displace the common law. The U.C.C. has a particular provision dealing with the conversion of negotiable instruments. As to the check involved in Count 1, it is plain that the plaintiff, as subrogee of the drawer of the check, is in the shoes of that drawer. The drawer of a check is an "issuer" under U.C.C. section 3–105(c). Under U.C.C. section 3–420(a)(i), an issuer is specifically precluded from maintaining an action for conversion of a check.

The plaintiff's feeble effort to avoid the effect of this statutory prohibition, relying on pre-revision (of U.C.C. Art. 3) case law and on the savings provision of section 3–420(a), as revised, is unpersuasive. Whatever the source of its purported conversion claim, whether under a theory established by Art. 3 or at common law, Official Comment 1, second para., to section 3–420 puts the *quietus* to any conversion claim: Because the instrument is NOT the property of the issuer, it cannot be converted as to him. It is that simple.

It was the obvious intent of the statute, as revised, that the statutory bar to conversion suits apply to **any** conversion suit, whatever its underlying theory. The statute has been so construed. *See, e.g., Sebastian v. D & S Exp., Inc.,* 61 F.Supp.2d 386, 390 (D.N.J.1999). In short, no one can maintain **any** claim for conversion for property that is not his. Once the checks were endorsed, under the "fictitious payee rule" the endorsements were validated, and good title to the checks and their cash proceeds could be passed. This is the essence of the fictitious payee rule of U.C.C. sections 3–404(b) and 3–405(b). The retention of a common law cause of action for conversion in section 3–420(a) is simply to make it clear that, where one has a present property interest in a check, conversion may lie at common law. For example, if a check is larcenously taken from one's possession, one may sue the thief for common law conversion, even though such taking does not give rise to a statutory conversion action under section 3–420. Therefore, the case law upon which plaintiff relies, *viz., Hartford Fire Ins. Co. v. Maryland Nat'l Bank,* 341 Md. 408, 671 A.2d 22 (1996), decided under the pre-revision version of section 3–420 (then section 3–419, which did not prohibit conversion actions by drawers), has been legislatively abrogated and should no longer be considered good authority.

As to the wire transfer, there are insufficient allegations in the complaint showing that the Bank of America should have known that the funds transferred by wire were the proceeds of converted checks, even if the theory of conversion were viable here, which it is not, as demonstrated above. It would be dangerous, and an unsound precedent indeed, to impose tort liability upon a bank for participating in a wire transfer involving stolen funds, even if it could be shown that the bank might have negligently dealt with one or two items deposited into the account from or to which the wire-transferred funds came or went. And even if Bank of America were properly chargeable with actual knowledge of fraud, the plaintiff would be precluded under U.C.C. section 3–420(a)(i) from maintaining an action for conversion with respect to the checks involved, or, obviously, the proceeds thereof. An action that is prohibited directly by statute cannot be maintained by indirect means.

■ With further regard to the wire transfers, the transfers in question were governed by the Electronic Funds Transfer Act of 1978 as amended, 28 U.S.C.

section 1693 *et seq.* (EFTA), as they arose from consumer bank accounts. That statute does not impose any liability in connection with wire transfers upon financial institutions to third parties, such as those who claim that a particular transfer represents property, or the fruits of property, that had been converted. (Because this was not a "wholesale" wire transfer, Art. 4A of the U.C.C. does not apply. *See* U.C.C. section 4A–108). Although 15 U.S.C. section 1693q makes it clear that the EFTA does not preempt state law unless it is inconsistent with federal law, state law here gives the plaintiff no comfort. Because the complaint does not allege that the property that was the subject of the wire transfer, *viz.,* funds in the account of Venus Baldwin, were taken from the actual possession of the plaintiff, and for reasons already adequately set forth *ante,* there can be no conversion claim under Maryland law. *See e.g., United States v. Arora,* 860 F.Supp. 1091 (D.Md.1994) *aff'd.,* 56 F.3d 62, 1995 WL 318486 (4th Cir.1995). Any claim for conversion of property is, by law, limited to the action that *dispossessed* Kaiser of its property, *viz.,* the taking for deposit or collection of the fraudulent checks into the accounts in which they were deposited. The insurmountable problem, of course, is that *any* such conversion claims are barred here by U.C.C. section 3–420(a)(i). Consequently, as a matter of law, the plaintiff cannot maintain any conversion action either for the check that is the subject of Count 1 or for the wire transfer. (There is no need to address whether the wire transfer was "authorized" or not under the EFTA or Art. 4A of the U.C.C., as the question of authority is only relevant with regard to a bank's liability to its *customer,* not to third parties.)

■ Plaintiff's Count 4 and Count 5, claiming for unjust enrichment and constructive trust, both fail as a matter of law, for the simple reason that the defendant retains not one penny of the proceeds of the check or the wire transfer, not to mention that there is no allegation at all that the plaintiff confirmed some benefit upon the defendant in connection with the original deposit of the checks. Of course, because there was no unjust enrichment, there is no case for the remedy of a constructive trust, in view of the fact that the defendant no longer has legal title to, or possession of, the property. *See Webb,* 181 Md. at 580, 31 A.2d 174. Constructive trust is simply not apt here, because the defendant does not claim title to, nor is it still in possession of, the disputed property.

Plaintiff, as to both the unjust enrichment and constructive trust claims, cites from the *Restatement (First) of Restitution,* specifically referring to comments following section 128. The problem for plaintiff is that section 128 assumes that the defendant "has *tortiously* obtained ... the chattels of another." What is tortious is, according to comment *a* to section 128, determined by whether it is wrongful conduct that "gives rise to a civil action either at law or in equity under the principles of the law of torts." As noted above, the plaintiff has failed to identify any such basis for a civil action in tort, in the first place.

Accordingly, a separate order will be entered, *dismissing* Count 1 of the plaintiff's complaint for lack of federal subject matter jurisdiction, and *dismissing* the remaining counts for failure to state a claim upon which relief can be granted, Fed. R.Civ.P. 12(b)(6).

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is, this 15th day of January, 2003, by the Court, ORDERED:

1. That Count 1 of the plaintiff's complaint BE, and it hereby IS, DISMISSED

for lack of federal subject matter jurisdiction;

2. That the remaining Counts of the plaintiff's complaint BE, and they hereby ARE, DISMISSED, for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6); and

3. That the Clerk of Court provide counsel with copies of this Order and of the foregoing Memorandum Opinion.